2018 PA Super 38

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| THOMAS RADECKI | |
| Appellant | No. 1558 WDA 2016 |

Appeal from the Judgment of Sentence entered September 21, 2016
In the Court of Common Pleas of Clarion County
Criminal Division at No: CP-16-CR-0000540-2013

BEFORE:  BENDER, P.J.E., OLSON, and STABILE, JJ.

OPINION BY STABILE, J.:                    **FILED FEBRUARY 21, 2018**

Appellant Thomas Radecki appeals from the September 21, 2016 sentence entered in the Court of Common Pleas of Clarion County ("trial court"), following his jury convictions for nine counts of unlawful administration, dispensing, delivery, gift, or prescription of a controlled substance by a practitioner, one count of criminal conspiracy, one count of dealing in the proceeds of illegal activity, and one count of corrupt organizations.[1]  Upon review, we affirm.

The facts and procedural history of this case are undisputed.[2]  Briefly, Appellant, a psychiatrist with medical offices in Clarion, Seneca, Kane, and

---

[1] 35 P.S. § 780-113(a)(14), and 18 Pa.C.S.A. §§ 903(a), 5111(a), and 911(b)(3), respectively.

[2] Unless otherwise noted, these facts are taken from the Trial Court Pa.R.A.P.1925(a) Opinion, 1/11/17, at 1-3.

DuBois, started and operated an office-based drug treatment program. Appellant's practice eventually expanded to approximately 2000 patients, many of whom were addicted to heroin or pain killers. Some of Appellant's patients were poor, young women who wanted drugs from him to nurse their addiction. Appellant, however, exploited their addiction and financial status by cultivating sexual relationships with them in exchange for free medication, free housing, office jobs, and forgiveness of account balances. Appellant has a child with one of these women.

To treat patients, Appellant prescribed Suboxone or Subutex. Appellant also diagnosed many patients with psychiatric disorders and depression and treated them with Ritalin and Adderall. The combination of Suboxone or Subutex with Ritalin and Adderall was contraindicated. Law enforcement was alerted to Appellant's practice based on the combination of medications and the sheer volume of doses that Appellant was prescribing his patients. The United States Drug Enforcement Administration ("DEA") and the Pennsylvania Office of Attorney General ("OAG") initiated an investigation of Appellant's practice, resulting in the executions of numerous search warrants at his practice locations and residence.

The OAG convened a statewide investigating grand jury in connection with its probe. On July 29, 2013, the grand jury issued Presentment Number

46,[3] recommending that criminal charges be brought against Appellant. On August 20, 2013, the OAG charged Appellant with, *inter alia*, multiple violations of the Controlled Substance, Drug, Device and Cosmetic Act, criminal conspiracy, dealing in the proceeds of illegal activity, and corrupt organizations.

The case proceeded to a jury trial, at which both sides presented testimony. Following a ten-day trial, a jury found Appellant guilty of nine counts of unlawful administration, dispensing, delivery, gift, or prescription of a controlled substance by a practitioner, one count of criminal conspiracy, one count of dealing in the proceeds of illegal activity, and one count of corrupt organizations.[4]

On June 3, 2016, the trial court sentenced Appellant to an aggregate term of 133 to 266 months' imprisonment. Specifically, with respect to the nine counts of unlawful administration, dispensing, delivery, gift, or prescription of a controlled substance by a practitioner, the trial court sentenced Appellant as follows:

1. Count 5 as to [M.M.], not less than 12 months nor more than 24 months,

---

[3] The Supervising Judge of the Thirty-Fourth Statewide Investigating Grand Jury, Norman A. Krumenacker III, accepted the grand jury's presentment and designated Clarion County, Pennsylvania, as venue for prosecution of Appellant's crimes.

[4] The jury found Appellant not guilty of four counts of unlawful administration, dispensing, delivery, gift, or prescription of a controlled substance by a practitioner, and one count of criminal conspiracy (corrupt organizations).

2. Count 6 as to [C.Y.], not less than 12 months nor more than 24 months,

3. Count 7 as to [A.A.], not less than 12 months nor more than 24 months,

4. Count 10 as to [T.C.], not less than 12 months nor more than 24 months,

5. Count 11 as to [A.C.], not less than 9 months nor more than 18 months,

6. Count 12 as to [J.D.], not less than 9 months nor more than 18 months,

7. Count 13 as to [R.P.], not less than 9 months nor more than 18 months,

8. Count 15 as to [A.Z.], not less than 12 months nor more than 24 months, and

9. Count 16 as to [C.M.], not less than 9 months nor more than 18 months.

Sentencing Order, 6/3/16, at 2-3. The trial court sentenced Appellant to 9 to 18 months in prison for criminal conspiracy, 12 to 24 months in prison for dealing in the proceeds of illegal activity, and 16 to 32 months in prison for corrupt organizations. The sentences on all twelve counts were ordered to run consecutively to each other. *Id.* at 4. The trial court also imposed fines and costs.

On June 10, 2016, the Commonwealth filed a motion for modification of sentence regarding costs and fines. The Commonwealth claimed that it erred in informing the trial court at sentencing that funds which had been seized from Appellant in civil forfeiture could be applied toward a fine as part of Appellant's sentence in his criminal case.

On June 13, 2016, Appellant filed post-sentence motions, arguing, *inter alia*, that the trial court abused its discretion in sentencing him in the

aggravated range, "running all sentences consecutive[ly] as they were part of the same plan and scheme with no intervening interrupting conduct," and imposing an aggregate term of 11 to 22 years' imprisonment. Appellant's Post-Sentence Motions, 6/13/16, at ¶ 2. On July 5, 2016, Appellant's trial counsel, John P. Troese, filed a motion for continuance, which the trial court granted on July 11, 2016. In so doing, the trial court continued the hearing on Appellant's post sentence motions to August 25, 2016.

On August 1, 2016, Attorneys Alexander H. Lindsay, Jr. and J. Andrew Salemme, entered their appearance on Appellant's behalf. On August 17, 2016, Appellant's new attorneys filed a motion for continuance, arguing:

> 8. For the several reasons that follow, counsel now requests that the [c]ourt grant a second continuance to permit new counsel to familiarize himself with the issues raised by trial counsel and to allow for amendment of the post sentence motions to include allegations of ineffective assistance of counsel. The amended post sentence motion will include a waiver of PCRA rights by [Appellant].
>
> 9. As the court is aware, trial transcripts were ordered by trial counsel and those transcripts are not yet available. The trial transcripts are indispensable to counsel in preparing for argument on the several issues raised in the post sentence motion. Counsel still has not been provided with a completion date.
>
> 10. Counsel has been meeting with [Appellant] at the Clarion County Jail as well as consulting with trial counsel and expects to file the amended post sentence motions within the next 10 days.

Second Motion for Continuance, 8/17/16, at ¶¶ 8-10 (unnecessary capitalization omitted) (sic). On August 19, 2016, the trial court denied the motion for continuance.

On August 23, 2016, Appellant's trial counsel, John P. Troese, filed a motion to withdraw his appearance. On August 24, 2016, the trial court denied trial counsel's withdrawal motion, reasoning:

The Comment to [Pa.R.Crim.P.] 120 advises the court to consider various factors, including whether a change in attorneys will delay the proceedings or prejudice [Appellant], particularly concerning time limits, and whether [Appellant] has failed to meet his financial obligations to pay for Attorney Troese's services or there is a written contractual agreement terminating representation at a specific stage in the proceedings. Also, the Comment provides, "[i]f a post-sentence motion is filed, trial counsel would normally be expected to stay in the case until disposition of the motion under the post-sentence procedures adopted in 1993. **See** Pa.R.Crim.P. 704 and 720.

In considering these factors, the court has first determined that a change in attorneys from Attorney Troese to Attorney Lindsay will delay the argument on the post-sentence motions scheduled for tomorrow because Attorney Lindsay has stated in his motion for continuance that trial transcripts are indispensable to him in preparing for argument on the motions and he does not know when the transcripts will be completed. It appears unlikely that Attorney Lindsay will be able to receive and review transcripts from the lengthy trial and prepare for argument and the attorneys will be available to present their arguments and the court will have sufficient time to decide the motions before the expiration of the 120-day time period set by Rule 720(B)(3)(a). If the court cannot meet the deadline established by Rule 720, [Appellant] may be prejudiced. Further, Attorney Lindsay has stated in his motion for continuance that he will be filing amended post-sentence motions, which require review and consideration by the attorneys for the Commonwealth, and may cause further delay.

In addition, [Appellant] has not demonstrated a need to change attorneys in order to effectively address the post-sentence motions. Attorney Troese should be well prepared to argue [Appellant's] positions on [Appellant's] and Commonwealth's post-sentence motions tomorrow because he represented [Appellant] during all pre-trial, trial and sentencing proceedings and he prepared [Appellant's] post-sentence motion. The only indication that [Appellant] believes Attorney Troese should not argue the motions is the statement in Attorney Lindsay's motion for continuance that he desires to amend the post-sentence motion to include allegations of ineffective assistance of counsel. [Appellant] has not made any specific allegations of ineffectiveness. [Attorney] Lindsay has not filed an amended post-sentence motion and this court has not determined whether [Appellant] may raise ineffectiveness claims in a post-sentence motion.

> In considering the additional factors in the Comment to Rule 720, there is no indication [Appellant] has failed to meet his financial obligations to pay for Attorney Troese's services or there is a written contractual agreement terminating representation at a specific stage in the proceedings.

Trial Court Order, 8/24/16 (unnecessary capitalization omitted).

On August 25, 2016, Appellant's new counsel filed supplemental post-sentence motions, raising twenty-one issues,[5] including claims of ineffective assistance of trial counsel. On September 21, 2016, the trial court granted in part and denied in part Appellant's post-sentence motions, and granted the Commonwealth's motion for modification of sentence. On the same day, the trial court issued an amended sentencing order.[6]

Appellant timely appealed to this Court on October 12, 2016. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant complied, raising fourteen assertions of error. On December 12, 2016, Appellant filed a supplemental Rule 1925(b) statement, raising four additional assertions of error. On January 11, 2017, the trial court issued a Pa.R.A.P. 1925(a) opinion.

On appeal, Appellant presents eleven issues for our review:

[I.] Did the trial court err in precluding [Appellant] from presenting the expert testimony of Dr. Johnson and in ruling that Dr. Johnson was not qualified as an expert, and could not testify that [Appellant] had a reputation in the office-based

---

[5] Many of the issues raised in the supplemental post-sentence motions were borrowed from the previous post-sentence motion filed by trial counsel.

[6] With the exception of rendering Appellant eligible for the Recidivism Risk Reduction Incentive (RRRI) program and imposition of new fines, Appellant's sentence remained unchanged.

buprenorphine treatment community for being knowledgeable and well-respected?

[II.] Whether the trial court erred in admitting into evidence testimony by [M.M.] regarding a settlement she received in a medical malpractice and personal injury suit against [Appellant], in violation of Pa.R.E. 408, where the testimony was not evidence of an effort by [Appellant] to obstruct the criminal investigation in this matter, and violated 42 Pa.C.S.[A.] § 6141?

[III.] Whether the trial court erred in failing to grant a mistrial based on the testimony of [M.M.] concerning a civil settlement and provided a misleading curative instruction to the jury regarding those statements where the evidence did not regard obstructing an investigation?

[IV.] Did the trial court err in allowing Agent James Embree to provide expert testimony regarding the distinction between methadone clinics and office based opioid therapy as well as the distinction between Suboxone and Subutex and that Subutex is abused by addicts, where Agent Embree was not qualified as an expert and did not provide an expert report?

[V.] Whether trial court erred in permitting expert testimony by pharmacist Bonnie Anthony regarding appropriate prescriptions for an opioid addicted individual with [Attention Deficit Hyperactivity Disorder ("ADHD")], where she was not qualified as an expert, did not provide an expert report, nor was she called as an expert witness?

[VI.] Did the trial court err in allowing irrelevant evidence to be introduced concerning the manner in which [Appellant] treated [M.F.], an employee?

[VII.] The trial court erred in not directing that the Commonwealth provide, under Pa.R.E. 1006, the actual records related to Steven Morse'[s] factually erroneous testimony concerning [Appellant] allegedly purchasing 589,140 dosage units of buprenorphine in 2011, more than two times more than any other purchaser in the country.

[VIII.] Whether the trial court erred in allowing the Commonwealth to exceed the scope of direct examination with respect to whether Dr. Bhagwandien had a collaborative agreement with nurse practitioners and the Commonwealth thereby suggesting that [Appellant] encouraged the nurse practitioners to improperly issue prescriptions for Suboxone?

[IX.] Did the trial court err by imposing an excessive sentence by imposing consecutive sentences in non-violent crimes on each count resulting in a *de facto* life sentence since [Appellant] is over seventy years of age.

- 8 -

[X.] Whether the trial court erred in finding that [Appellant] did not make a showing of good cause or exceptional circumstances to allow him to waive his PCRA rights and permit his ineffective assistance of counsel claims to be reviewed on direct appeal where he is over seventy years of age and the trial court repeatedly denied [Appellant's] post-sentence motion issues on the grounds that trial counsel had waived most of these claims entitling [Appellant] to a limited remand to waive his PCRA rights and raise ineffectiveness claims on direct appeal?

[XI.] Did the trial court err in refusing to allow trial counsel, John Troese, to withdraw upon the entry of appearance by the undersigned, depriving [Appellant] of his chosen counsel for purposes of his post-sentence motion and the relevant hearing, and violating his right to counsel under the Sixth Amendment and Article I, § 9?

Appellant's Brief at 5-7 (sic).[7]

Appellant's first eight issues challenge the trial court's evidentiary rulings. It is settled:

[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Tyson*, 119 A.3d 353, 357-58 (Pa. Super. 2015) (internal citations omitted). Moreover, an appellant bears a "heavy burden" to show that the trial court has abused its discretion. *Commonwealth v. Christine*, 125 A.3d 394, 398 (Pa. 2015). "[A]n appellate court may affirm a valid judgment based on any reason appearing as of record, regardless of whether it is raised by appellee." *Commonwealth v. Moore*, 937 A.2d 1062, 1073 (Pa. 2007) (citation omitted).

---

[7] Appellant does not challenge his convictions on the basis of sufficiency or weight of the evidence.

We first address Appellant's argument that the trial court abused its discretion in disallowing him to present the expert testimony of Dr. Brian Johnson because trial counsel neglected to provide an expert report. Appellant argues that, to rebut the Commonwealth's expert's testimony that Appellant's prescribing practices were in disharmony with accepted treatment principles, he sought to present Dr. Johnson's medical testimony. Dr. Johnson would have testified that "[Appellant's] prescribing practices and the frequency of [his] diagnosis of ADHD in his patients was conservative and that his treatment of those patients was excellent." Appellant's Brief at 30. Appellant, however, concedes that he failed to follow the trial court's orders when his trial counsel did not furnish the Commonwealth with an expert report.

The Commonwealth argues that the trial court did not abuse its discretion because Appellant repeatedly failed to comply with the trial court's directive to provide the Commonwealth with an expert report. We agree.

Pennsylvania Rule of Criminal Procedure 573 governs, among other things, pretrial disclosure of expert reports during discovery. Rule 573 provides in pertinent part:

**(C) Disclosure by the Defendant.**

(1) In all court cases, if the Commonwealth files a motion for pretrial discovery, upon a showing of materiality to the preparation of the Commonwealth's case and that the request is reasonable, the court may order the defendant, subject to the defendant's rights against compulsory self-incrimination, to allow the attorney for the Commonwealth to inspect and copy or photograph any of the following requested items:

> (a) results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of the defendant, that the defendant intends to introduce as evidence in chief, or were prepared by a witness whom the defendant intends to call at the trial, when results or reports relate to the testimony of that witness, provided the defendant has requested and received discovery under paragraph (B)(1)(e); and
>
> (b) the names and addresses of eyewitnesses whom the defendant intends to call in its case-in-chief, provided that the defendant has previously requested and received discovery under paragraph (B)(2)(a)(i).
>
> (2) If an expert whom the defendant intends to call in any proceeding has not prepared a report of examination or tests, the court, upon motion, may order that the expert prepare and the defendant disclose a report stating the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions and the grounds for each opinion.
>
> **(D) Continuing Duty to Disclose.** If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness.
>
> **(E) Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or _**may prohibit such party from introducing evidence not disclosed**_, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(C)-(E) (emphasis added). Thus, a court has the discretion to require an expert, who has conducted an examination or test for a defendant but who has not completed a report for the defendant, to prepare (and the defendant to disclose) a report, which must provide, among other things, the subject matter on which the expert is expected to testify and a summary of the expert's opinion. _**See Commonwealth v. Kennedy**_, 876

- 11 -

A.2d 939, 946-47 (Pa. 2005). "A court's discretion to order the production of such a report is, again, dependent upon whether the defendant intends on calling the expert as a witness in the criminal proceedings."[8] *Id.* When the defendant fails to comply with a trial court's order requiring preparation and disclosure of an expert report, the trial court may sanction the defendant by prohibiting the defendant from introducing evidence not disclosed, other than testimony of the defendant. *See Commonwealth v. Mendez*, 74 A.3d 256, 261 (Pa. Super. 2013), *appeal denied*, 87 A.3d 319 (Pa. 2014). To sanction the defendant for discovery violations, the trial court also may enter "such other order as it deems just under the circumstances." *Id.*

Instantly, in disallowing Appellant from presenting the expert testimony of Dr. Johnson, the trial court reasoned:

> On October 1, 2014, the court issued an order and in paragraph 2, directed defense counsel to provide copies of expert reports to the Commonwealth by October 21, 2014. [Appellant] did not provide a report from Dr. Johnson by that date.
>
> Next, the court held a pre-trial conference on November 24, 2014. Defense attorney Troese stated he may want to call other experts. This court issued an order on that date stating that by agreement of counsel, Mr. Troese would inform counsel for the Commonwealth by December 22, 2014, whether he would be retaining any additional experts and provide dates by which he would provide written reports. [Appellant] did not name Dr. Johnson as a possible expert witness by that date.
>
> After various proceedings, the court held a pre-trial conference on November 3, 2015 and set the dates for trial in April 2016. At that time, Attorney Troese mentioned he may be calling Dr. Johnson as a witness. The court stated in the pre-trial conference order of November 3, 2015, on page 2 in paragraph

---

[8] Our Rules of Criminal Procedure generally protect the work-product of agents hired by defense attorneys from discovery, and Rule 573(C) qualifies this protection.

3.a., that Mr. Troese shall provide a written report from Dr. Johnson to the Commonwealth by December 14, 2015, at the latest. [Appellant] did not provide a report by that date. The court is not aware that [Appellant] ever obtained a written report from Dr. Johnson.

The matter of Dr. Johnson testifying was again raised before trial. On March 21, 2016, the court held a status conference with the attorneys. Defense counsel Troese inquired whether Dr. Johnson could testify as an expert. This was the first time the matter had been raised since the time of the pre-trial conference on November 3, 2015. [Appellant] still had not provided a written expert's report. The court decided Dr. Johnson could not testify as an expert because [Appellant] had failed to meet the agreed-upon deadlines of October 24, 2014, December 22, 2014, and December 14, 2015.

Trial Court Opinion, 9/21/16, at 29-30. Based on our review of the record, we conclude that the trial court did not abuse its discretion, under Rule 573(E), in disallowing Appellant to present the testimony of his medical expert Dr. Johnson because Appellant failed to comply with several discovery deadlines to submit an expert report prepared by Dr. Johnson. Also, the record here does not indicate that Dr. Johnson ever prepared an expert report.

Appellant also argues that the trial court abused its discretion in disallowing him to call to the stand Dr. Johnson as a character witness.

Pennsylvania Rule of Evidence 404, relating to character evidence, crimes and other acts, provides in relevant part:

**(a) Character Evidence.**

*(1) Prohibited Uses.* Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.

*(2) Exceptions for a Defendant or Victim in a Criminal Case.* The following exceptions apply in a criminal case:

(A) a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it[.]

Pa.R.E. 404(a).

> Evidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputation for the particular trait or traits of character involved in the commission of the crime charged. Such evidence must relate to a period at or about the time the offense was committed . . . and must be established by testimony of witnesses as to the community opinion of the individual in question, not through specific acts or mere rumor. In a rape case, evidence of the character of the defendant would be limited to presentation of testimony concerning his general reputation in the community with regard to such traits as non-violence or peaceableness, quietness, good moral character, chastity, and disposition to observe good order.

*Commonwealth v. Lauro*, 819 A.2d 100, 109 (Pa. Super. 2003) (internal citations and quotation marks omitted), *appeal denied*, 830 A.2d 975 (Pa. 2003).

Here, our review of the trial transcript indicates that Appellant did not seek to have Dr. Johnson testify as a character witness. Any suggestion to the contrary is a mischaracterization of the record. The trial court noted:

> At trial, on April 22, 2016, Mr. Troese made an offer of proof that Dr. Johnson would testify he is a psychiatrist. He has worked with [Appellant] and discussed prescribing benzodiazepines with buprenorphine. [Appellant] has researched the subject. He would not state that the research was correct or what it showed. [Appellant] chose not to call Dr. Johnson to testify as a fact witness.

Trial Court Opinion, 9/21/16, at 31. Specifically, at trial, Appellant's counsel made the following offer of proof:

> [The trial court:] All right. I wasn't able to get everything you were saying, Jack, about what Dr. Johnson would testify, what you're proposing to have him testify to. So if you could state your offer of proof?
>
> [Defense counsel:] It's very limited, and it's for that he is—he is a leader in the addiction field and—
>
> [The trial court:] Who is?

[Defense counsel:] Dr. Johnson. And that [Appellant] had discussed with him his practice and that I would ask his opinion of [Appellant's] basic knowledge for his—for addiction medicine.

[The trial court:] What do you mean his basic knowledge?

[Defense counsel:] Well, if he's knowledgeable or if—or—is he knowledgeable in the field of addiction medicine.

Reproduced Record (R.R.) at 1734a-35a. As the Commonwealth points out, the "offer of proof in no way reflects a desire to have Dr. Johnson testify about [Appellant's] reputation in any community, but rather to have him express his personal opinion of [Appellant's] professional knowledge and/or competence." Commonwealth's Brief at 11, **see** Pa.R.E. 405(a) ("testimony about the witness's opinion as to the character or character trait of the person is not admissible."). Thus, because Appellant never sought to have Dr. Johnson testify as a lay witness about Appellant's reputation, the trial court did not abuse its discretion in precluding Dr. Johnson from testifying at trial.

Appellant next argues that the trial court abused its discretion in allowing M.M. to testify about a settlement she received from Appellant in a medical malpractice and personal injury action that she had brought against him.[9] Specifically, Appellant argues that the trial court's ruling violated Pa.R.E. 408, relating to compromise offers and negotiations.

_____

[9] We observe that Appellant fails to cite to the place in the record where this claim was preserved before the trial court. **See** Pa.R.A.P. 2117(c) (requiring statement of case to specify state of proceedings at which issue sought to be reviewed on appeal was raised), Pa.R.A.P. 2119(e) (requiring same of argument section of appellate brief); **see also Commonwealth v. Fransen**, 42 A.3d 1100, 1106 n. 11 (Pa. Super. 2012) (**en banc**) ("Failing to direct this Court to specific portions of the record in support of an argument violates

The Commonwealth counters that this issue is waived because Appellant failed to lodge a timely objection at trial. ***See*** Commonwealth's Brief at 13-14. We agree.

Rule 408 provides in pertinent part:

**(a) Prohibited Uses.** Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

(1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or a statement made during compromise negotiations about the claim.

**(b) Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Pa.R.E. 408.

It is settled that an appellant's "failure to raise a contemporaneous objection to evidence at trial waives that claim on appeal." ***Commonwealth v. Thoeun Tha***, 64 A.3d 704, 713 (Pa. Super. 2013) (citation omitted); ***see Commonwealth v. Baumhammers***, 960 A.2d 59, 73 (Pa. 2008) (to preserve issue for appellate purposes, party must make timely and specific objection to ensure trial court has opportunity to correct alleged error); ***Keffer v. Bob Nolan's Auto Service, Inc.***, 59 A.3d 621, 645 (Pa. Super. 2012) (citations omitted) (emphasis added) ("one must object to errors,

---

Pa.R.A.P. 2119(c) [and for] that reason alone, we could conclude this issue is waived."), ***appeal denied***, 76 A.3d 538 (Pa. 2013). We, however, decline to find waiver on this basis.

improprieties or irregularities **at the earliest possible stage** of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter."); *see also* Pa.R.E. 103(a) (providing that an "[e]rror may not be predicated upon a ruling that admits or excludes evidence unless . . . a timely objection . . . appears of record."); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Our review of the trial transcript reveals as follows:

Q. [M.M.], you filed a lawsuit against the defendant; is that accurate?

A. Yes.

Q. Tell us, why did you sue him?

A. Because when I went to jail, it wasn't long after I stopped living with him, and he agreed to see my parents and family for free for a year. And when I went to jail, he started charging my parents to see them and charging back pay and charging them for their appointments. That made me mad that he went back on his word and blocked contact with me at the jail. So I decided to sue him.

Q. What was the basis of the lawsuit?

A. Medical malpractice and personal injury.

Q. Who was your attorney?

A. John Lackatos.

Q. Did that suit get resolved?

A. It settled out of court, yeah.

Q. Tell us about the settlement.

A. Well, I mean, I was still in jail at that point for when I went to jail in November. And I called John from the jail, and he came to see me. And me met with Dr. Radecki, and they worked out the terms of the settlement.

Q. What were the terms of the settlement?

A. I would get one large sum, and the rest would be put in a trust fund that would -- I don't know how you say it. It grows, I guess, until I get it. I'm not supposed to get it until 69 and a half.

Q. 69 and a half?

A. Yeah.

Q. 59 and a half?

A. I don't know. Until I was really old.

Q. I'm there, so. As far as the settlement, how much money was it?

A. I believe it was close to a hundred thousand. I think and John got 40 percent of that.

Q. Lawyers?

A. Yeah.

Q. And you got the rest?

A. Yeah.

Q. And so what was the lump sum; do you remember?

A. I think the first check I got was 26, $27,000.

Q. What did you do with that money?

A. Well, I paid off my parent's house, got them a car, got me a car. I put 15 percent away for my daughter in a trust fund for her.

Q. And the rest is in a trust fund for you?

A. No.

R.R. at 380a-82a. To the extent Appellant did object to the settlement testimony, it was not ***until after*** M.M. had finished discussing the settlement issue and how she used the settlement funds.

[Defense counsel]: Your Honor, can we approach?

[The trial court]: Do you have an objection?

[Defense counsel]: I think we should approach.

- 18 -

[The trial court]: Okay.

**(Whereupon, the following sidebar discussion was held on the record):**

[Defense counsel]: Your Honor, I think this testimony is not admissible at all. It's compromising settlement.

[Commonwealth]: This is criminal consciousness of guilt, trying to pay off of a witness. It's always admissible, Your Honor. He can spin it any way, but this is admissible as consciousness of guilt and why it settled and probably to try to shut her up.

[The trial court]: It's not a compromise of settlement of this case.

[Defense counsel]: No. I mean, the rule of evidence says you cannot introduce it in any case.

[The trial court]: Okay. Can you get me the rule? What are you referring to?

[Defense counsel]: Rule 408.

[The trial court]: Okay. Rule 408, Evidence of the following is not admissible, on behalf of any party, either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction.

B says: The Court may admit this evidence for another purpose, such as providing a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Is that --

[Commonwealth]: It's consciousness of guilt and to say he may be buying this witness's silence.

[The trial court]: Do you have any further argument?

[Defense counsel]: No, Your Honor.

[The trial court]: The objection is overruled.

[Commonwealth]: For the record, also he brought up the lawsuit of the previous witness that was asked about it. I wanted that on the record.

[The trial court]: All right.

*Id.* at 382a-83a. As the foregoing indicates, Appellant did not object timely to the introduction of testimony regarding the settlement. Accordingly, he has failed to preserve this issue for appeal. Even if this issue is not waived, the trial court did not abuse its discretion in permitting M.M. to testify regarding the settlement because it was relevant to show that Appellant desired to buy her silence. The undisputed facts here reveal that Appellant sought to keep M.M. quiet about their sexual relationship by offering free medical services to her family. When he reneged on his promise, M.M. instituted the civil action against him to accomplish the same end. Appellant settled the case with M.M. before the commencement of his criminal trial *sub judice*. Thus, the trial court found that the settlement information was relevant to the Commonwealth's contention that Appellant settled the case in an effort to obstruct the criminal investigation. **See** Trial Court Opinion, 9/21/16, at 13-16.

Appellant next argues that the trial court abused its discretion in failing to grant a mistrial based on the testimony of M.M. regarding the settlement.

We explained in **Commonwealth v. Szakal**, 50 A.3d 210 (Pa. Super. 2012):

> [T]he decision to declare a mistrial is within the sound discretion of the trial court and will not be reversed absent a flagrant abuse of discretion. A mistrial is an extreme remedy that must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial.

*Id.* at 218 (citation and quotation marks omitted). Under Pennsylvania Rule of Criminal Procedure 605, relating to mistrial, "[w]hen an event prejudicial

to the defendant occurs during trial only the defendant may move for a mistrial; the motion **shall** be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." Pa.R.Crim.P. 605(B) (emphasis added); **see also Szakal**, 50 A.3d at 219 (noting that the appellant's claim was waived because the appellant waited a substantial period before moving for mistrial); **Commonwealth v. Brown**, 332 A.2d 828, 830 (Pa. Super. 1974) (noting the appellant timely moved for a mistrial); **Commonwealth v. Greiner**, 455 A.2d 164, 166 (Pa. Super. 1983) (observing that the appellant filed a "timely motion for a mistrial").

As we noted in addressing Appellant's previous issue, Appellant did not object timely to M.M.'s testimony regarding the civil settlement. Similarly, Appellant did not move timely for a mistrial. Indeed, Appellant did not move for a mistrial until the close of the Commonwealth's direct examination of M.M.

The trial transcript reveals:

[The trial court]: Let's go on the record. We're in the judge's chambers. It's twenty minutes before four. I've invited the attorneys to give a further explanation of my ruling on the last defense objection to testimony by [M.M.] about the civil settlement with the defendant. I had ruled from the bench that the objection, based on Rule 408, was overruled. And by way of further explanation, I view the testimony is falling within the exception to Rule 408(b); that it was offered by the Commonwealth for the purposes of proving an effort to obstruct a criminal investigation or prosecution.

My suggestion off the record, which I'm now putting on the record, to the attorneys is to give the jury a cautionary instruction that they shall only consider the testimony of [M.M.] concerning the lawsuit and the settlement strictly and solely for the purpose of considering whether it is evidence of an effort to obstruct a criminal investigation or a prosecution; and they shall not consider it as evidence of an admission of liability, either with regard to claims for money damages or an admission of criminal liability.

- 21 -

So I understand that's acceptable to the Commonwealth and Mr. Troese. Do either of you have comments you would like to make?

[Defense counsel]: **I would like to ask for a mistrial**. I think her testifying that it went on prejudices the jury as to my client admitted that he did wrong. She went on, and it puts us in a situation where we have to defend even the facts introduced. And I think it prejudices the jury that that was the -- there was no testimony that he attempted to obstruct any type of investigation by way of that.

So I think the only reason that it was introduced was for an admission. There was no testimony that "he told me not to talk" or prohibition of disclosure of the settlement of. I think the only reason it was put in was for admission of liability.

I think with that in front of a jury, it creates a situation where it prejudices my client from getting a fair trial from here on out.

[The trial court]: Mr. Serge[, *i.e.*, the Commonwealth]?

[Commonwealth]: My response is a few fold. I guess, number one, it's not true what Mr. Troese said. No evidence was presented by [M.M.] regarding obstructing an investigation.

To the contrary, herself, she testified that she was given free medical care to her and her family to keep quiet, because [Appellant] told her that the relationship was improper.

When you couple that with the final settlement, she sued him because he started charging back pay to her parents and everybody wanted money back. She sued him. He settled.

The Commonwealth's argument with respect to that evidence was never intended or never would be an admission of criminal liability or liability of any sort. The Commonwealth's position is very clear. It would be evidence of an attempt to quiet a witness. It was a settlement done, pre-criminal resolution. And I think there's evidence in the record.

I would also note for the record, as I did at side bar, that [Appellant] brought out evidence of lawsuits with other witnesses. So to complain -- and one of those cases being resolved when defendant himself resolved it I think is not credible.

So the Commonwealth is okay. We believe that a cautionary jury instruction to the effect that the Court proposed is adequate in this case, and a mistrial is certainly not warranted in this matter.

[Defense counsel]: To respond, the argument was that it's always allowed in a criminal case of consciousness of guilt. That

- 22 -

goes right to admission, or inferred as an admission to the claim. And that was the argument given at sidebar.

The fact that I brought up a lawsuit goes to that witness's bias. And we weren't asking about admission of guilt or settlement. I think the reason for that rules is to protect the person who settles. And it's to encourage settlement. They're not brought in subsequent actions. That's the purpose. They're not brought in subsequent actions for case of admission.

I think the fact that the objection was then overruled and continued on, I think that much testimony prejudices the jury. I don't think a cautionary instruction is going to cure what she said.

[The trial court]: Well, before, Mr. Troese, you made an objection, [M.M.] testified as follows: She filed a lawsuit against [Appellant] because when she went to jail, he started charging her parents. He blocked her calls and it made her mad. She filed a medical malpractice and person[al] injury case with John Lackatos. Settled when she was in jail, one large sum, and the rest was in trust until she got older. It was close to a hundred thousand dollars. John got 40 percent. First part in cash. I think she paid 26 or $27,000. She paid off her parent's house [sic], got them a car, got her a car, and put money in an account for her daughter.

**At that point is when you made the objection. So the jury had heard all of that before any objection was made, and we had the sidebar, actually, approached the bench and made the objection at the bench**.

Reference the Commonwealth is making is to the prior testimony that's related to that civil lawsuit and settlement related to earlier testimony. Just a short time before, there was talk about the settlement where [M.M.] testified she never got a paycheck; he gave her money; and to see her and her family for free. Mom, dad, sister and then talking about her brother being 14 and he went too.

When she moved out, when he asked her to leave, wasn't a good idea. She moved out. He told her there was another girl who lived there, and clothes and toys were there. I think she said he wrote her a check and so on.

Whenever she moved, he said he would see her for free as long as she didn't say anything, and she agreed to it. And he agreed he would see her and her family for free for a year as long as she didn't say anything, and she agreed to it. And then moving back to her parents.

So that prefaced the questions about the settlement. She specifically said that he went back on his agreement, and that's the reason she sued him. So the agreement, the verbal agreement that he made with her as long as she didn't say

- 23 -

anything, clearly was related by a claim by the Commonwealth that she was promised something by way of free medical care for her family and herself for a year if she would not say anything [about the sexual relationship]. And he went back on it.

So the settlement, the times, was an important factor as well. Because, apparently, he -- while she was still in jail -- he settled right away while she was in jail. She didn't testify when the settlement occurred, but certainly it was before this trial started.

So for those reasons, I do find it's relevant to a claim by the Commonwealth that he made that settlement in an effort to obstruct the criminal investigation or prosecution. The jury ought to at least consider it for that purpose, whether they think so or not.

But I don't want them thinking that it's relevant to an admission of liability that he did commit malpractice or caused her injury or that it's admission of criminal responsibility. So I'll give the cautionary instruction. The motion for mistrial is denied.

[Defense counsel]: Thank you.

[Commonwealth]: Thank you.

[The trial court]: So we'll see you out there.

**(Sidebar discussion concluded at 3:49 P.M., and court proceedings resumed at 3:56 P.M.)**

[The trial court]: Members of the jury, before we continue the questioning of [M.M.], you'll recall there was some testimony on questioning by the attorney for the Commonwealth about a lawsuit and the settlement of a lawsuit that [M.M.] filed. She described it as a medical malpractice and personal injury. I'm now going to give you an instruction at this time on that.

You shall consider that testimony about the lawsuit and the settlement and the terms and conditions of the settlement only for one purpose, and that would be to determine **whether it is evidence of an effort by the defendant to obstruct a criminal investigation or prosecution**.

And I'm instructing you as well that you **shall not consider that evidence as any evidence or proof that the defendant admitted or was liable for civil money damages for malpractice or personal injury or that he was admitting any criminal responsibility through that settlement**.

So the only purpose for which you may consider that part of the witness's testimony concerning lawsuit and settlement is to determine whether it serves as evidence of an effort by the defendant to obstruct a criminal investigation or prosecution and

> not as any proof that he admitted liability for committing medical malpractice or personal injury or that he was admitting any criminal responsibility.
>
> So when we recessed, Mr. Troese, you were ready to begin your cross-examination, so you may proceed.

R.R. at 385a-94a (emphasis added). As stated previously, Appellant did not object timely to M.M.'s testimony regarding the settlement. Moreover, he also did not move timely for a mistrial, as evidenced by the foregoing excerpts of the trial transcript. Accordingly, the trial court did not abuse its discretion.

Nonetheless, even if Appellant suffered any prejudice based on the settlement testimony, it was cured. The trial court issued a curative instruction to the jury to consider M.M's testimony regarding the settlement only for determining whether the settlement demonstrated an effort by Appellant to obstruct a criminal investigation.[10, 11] The trial court further instructed the jury not to consider the settlement testimony as any proof that Appellant admitted liability for committing medical malpractice or personal injury, or that he admitted any criminal responsibility. *See Commonwealth v. Elliott*, 80 A.3d 415, 445 (Pa. 2013) (noting that a jury is presumed to have followed instructions provided by the trial court), *cert. denied*, 135 S.Ct. 50 (2014).

_____

[10] We note that Appellant was not charged with the crime of obstruction of justice. The record makes clear, however, the term "obstructing" a criminal investigation is used to indicate only that Appellant paid M.M. hush money to buy her silence.

[11] To the extent Appellant challenges in his brief the content of the jury instruction, such challenge is waived because he failed to raise it before the trial court. *See* Pa.R.A.P. 302(a).

We next address Appellant's fourth and fifth issues, which we have combined for ease of disposition. Appellant argues that the trial court abused its discretion in allowing Agent Embree and Pharmacist Anthony to offer expert testimony. With respect to Agent Embree, Appellant contends that the agent testified as an expert about the distinction between methadone clinics and office-based opioid therapy, and Suboxone and Subutex. Similarly, Appellant appears to contend that Pharmacist Anthony testified as an expert when she answered a hypothetical question whether Strattera would be an appropriate medication for an opioid patient with ADHD.[12]

Even assuming, without deciding, that the trial court abused its discretion in permitting Agent Embree and Pharmacist Anthony to offer expert testimony, we conclude that Appellant still is not entitled to relief.

If a trial court abuses its discretion in issuing an evidentiary ruling, "a verdict can still be sustained if the error was harmless."[13] *Commonwealth v. Poplawski*, 130 A.3d 697, 716 (Pa. 2015) (citation omitted). In *Commonwealth v. Cooley*, 118 A.3d 370 (Pa. 2015), our Supreme Court explained that "[a]n error is harmless if it could not have contributed to the verdict. In other words, an error cannot be harmless if there is a reasonable

---

[12] In incorporating fully footnote 9, *supra*, we note again Appellant's failure to cite to the place in the record where his claim concerning Pharmacist Anthony was preserved before the trial court.

[13] "The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial." *Commonwealth v. Reese*, 31 A.3d 708, 719 (Pa. Super. 2011) (*en banc*) (citation omitted).

possibility the error might have contributed to the conviction." ***Cooley***, A.3d at 380 (citation omitted); ***see also Commonwealth v. Mitchell***, 839 A.2d 202, 214-15 (Pa. 2003) ("An error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict.").

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Hutchinson***, 811 A.2d 556, 561 (Pa. 2002) (citation omitted). "The Commonwealth has the burden of proving harmless error beyond a reasonable doubt." ***Poplawski***, 130 A.3d at 716 (citation omitted).

Here, our review of the record reveals that the trial court's decision in permitting Agent Embree and Pharmacist Anthony to offer expert testimony was harmless. Specifically, the admitted testimony, erroneous or otherwise, was merely cumulative of other untainted evidence.

Agent Embree's testimony on the difference between methadone clinics and office-based opioid therapy, and Subutex and Suboxone was cumulative of the testimony offered by the Commonwealth's expert witness Dr. Russell Carter. Dr. Carter opined that office-based opioid treatment requires the least amount of supervision because patients "come in once a month to see the doc[tor] and the rest of the time they're free to roam." R.R. at 1073a-75a.

On cross-examination, Dr. Carter testified that methadone clinics provide a higher level of supervision because "[t]here's a greater level of control than for office-based opioid therapy because the client, the individual has to go to the clinic basically every day to receive one dose of methadone which will cut cravings for approximately 24 hours or longer." *Id.* at 1275a-77a. Dr. Carter also testified in detail about the difference between Subutex and Suboxone and opined that Subutex was more susceptible to abuse because it did not contain naloxone. *Id.* at 1095a-96a. Moreover, and interestingly, Appellant's expert Dr. William Santora also testified that Subutex could be abused. "I don't use very much Subutex. I know many other doctors do, but my concern would be that it is more easily divertible and more easily to inject." *Id.* at 1804a. Pharmacist Anthony's disputed testimony also is cumulative of Dr. Carter's testimony. Like Pharmacist Anthony, Dr. Carter too opined that Strattera would be an appropriate option for an opioid-addicted individual suffering from ADHD. *Id.* at 1092a-93a. Accordingly, we consider any error by the trial court in permitting Agent Embree and Pharmacist Anthony to offer their testimony to be harmless.

Appellant next argues that the trial court abused its discretion in permitting M.F., a former employee of Appellant, to offer irrelevant testimony about how Appellant treated her.

Relevance is the threshold for admissibility of evidence. **Commonwealth v. Cook**, 952 A.2d 594, 612 (Pa. 2008). Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than

it would be without the evidence; and (b) the fact is of consequence in determining the action. Pa.R.E. 401; *Commonwealth v. Drumheller*, 808 A.2d 893, 904 (Pa. 2002). "Evidence that is not relevant is not admissible." Pa.R.E. 402. In addition, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403; *see Commonwealth v. Kouma*, 53 A.3d 760, 770 (Pa. Super. 2012) (stating that even when evidence meets the relevance requirements, "such evidence may still be excluded where its probative value is outweighed by the danger of unfair prejudice.").

> However, [e]vidence will not be prohibited merely because it is harmful to the defendant. [E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based on something other than the legal propositions relevant to the case. . . . This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand[.]

*Kouma*, 53 A.3d at 770 (citation omitted); *see* Pa.R.E. 403 cmt. (defining "unfair prejudice" as "a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially.").

Appellant here argues that the trial court abused its discretion in permitting M.F. to testify about Appellant's disparaging remarks concerning her weight which were not relevant. The Commonwealth contends that M.F.'s testimony was relevant to explain Appellant's attitude toward women and his

physical criteria for selecting women whom he targeted with his sexual advances. Commonwealth's Brief at 24. Additionally, the Commonwealth argues that M.F.'s testimony was relevant to assist the jury in evaluating the testimony of several women, who testified at trial about being a target of Appellant's sexual advances. *Id.* The Commonwealth points out that M.F.'s testimony explains why Appellant did not attempt to recruit her to his commune, "despite the fact that she, like some of his other targets, was a single woman facing some challenging life circumstances." R.R. at 949a-53a.

At issue is the following testimony:

Q. How long did you work with [Appellant]? Till what date?

A. April 19th of 2012.

Q. Was there a reason you left at that time?

A. Several reasons I left.

Q. Could you tell the jurors what that was?

A. It was very concerning how the focus of the program had changed. Initially, you know, it was definitely psychiatric care and the maintenance of the other patients, but then the Suboxone sort of seemed to take over everything, the focus of just growing for the purpose of taking on as many patients as -- as could be possible; and then also I was concerned with some of the things that were happening, you know, girls that were being treated as patients coming in to work in the office as well as just the general way I was being treated as well. There were several times I was discriminated against for my size.

Q. What do you mean by that? Tell us what you mean.

A. I can remember specifically one time where --

[Defense counsel]: Your Honor, I'm going to object to relevance.

[The trial court]: How is it relevant?

[Commonwealth]: It explains why she left the practice, Your Honor.

[The trial court]: The objection is overruled.

BY [Commonwealth]:

Q. You may go on.

A. Okay. [Appellant] was in the office with a patient, and I had gone to turn the air conditioning on. And I could hear him say that the only reason I was turning the air conditioning on was because I was fat.

Q. Did he ever make comments to your face like that?

A. Not directly to my face, but -- well, no. I'm sorry. That's not correct. When I first interviewed with him, I can specifically remember him saying to me he wanted to build an income-sharing community and that I was too big, I believe was the wording he used, too big of a girl to be part of that community, which I didn't understand in the slightest what that had meant on my first interview. So I kind of disregarded the comment entirely.

Q. But he did bring up about an income-sharing community in that first comment?

A. In that first comment.

Q. First interview?

A. Yes.

Q. What did he say about an income-sharing plan?

A. He talked about it on several occasions after that. The idea was to build a community where people lived and worked together for the greater good, I guess, to -- I don't -- I don't know how else to describe it other than maybe like a commune situation where you would live and work and eat and share meals and --

Q. Okay.

A. There would be no money exchanged. You would work in the community. You know, they would take care of you, basically, this community would.

Q. But he said you were too big to be a part of that?

A. Right, because in a later manifesto that was written, there was specific -- very specific rules in a page that he -- a document that he put out online trying to recruit people to come and live in the community. He stressed, you know, a high IQ living with -- what do I want to say -- the environment as a concern, very -- you know, he wanted to leave a small -- what do I want to say -- environmental footprint.

*Id.* at 955a-58a.

Based on our review of the record, we agree with the trial court's conclusion that M.F.'s testimony was relevant. As the trial court reasoned:

> [Appellant] faced thirteen criminal charges related to his treatment of thirteen female patients. There was extensive evidence at trial that [Appellant] made sexual advances towards certain female patients and attempted to recruit them into his income-sharing community. [M.F.'s] testimony about how she was treated by [Appellant] was relevant evidence of his attitude toward female patients in his practice, as well as how he chose patients to target for sexual relationship. The testimony was also relevant evidence of the characteristics [Appellant] considered when choosing patients to reside in his income-sharing community or to employ at his office.

Trial Court Opinion, 1/11/17, at 10. Appellant's attempts to distinguish M.F. from his patients because of M.F.'s status as an employee is unavailing. The uncontradicted evidence at trial established that Appellant did not distinguish between patients and employees. In fact, he hired a number of his patients with whom he had sexual relations as employees and continued with the sexual relations as they worked for him. *See* Commonwealth's Brief at 24. Accordingly, Appellant is not entitled to relief.

Appellant's next argument is that the trial court abused its discretion in failing to direct the Commonwealth to provide under Pa.R.E. 1006, "the actual records related to Steven Morse'[s] factually erroneous testimony concerning [Appellant] allegedly purchasing 589,140 dosage units of buprenorphine in 2011, more than two times more than any other purchaser in the country."

Appellant's Brief at 44.[14]   Appellant sought documents supporting the summary of Appellant's drug purchases as testified to by Mr. Morse.

The Commonwealth argues that this issue is waived because Appellant did not file a motion for disclosure of documents until after the Commonwealth's witness Mr. Morse, a representative of pharmaceutical wholesaler Carinal Health, had testified.   Commonwealth's Brief at 25. Specifically, the Commonwealth points out that Mr. Morse testified on April 14, 2016 about Appellant's purchase of 589,140 dosage units of buprenorphine.   *Id.*   Appellant did not object to the testimony.   Appellant, however, filed his motion for disclosure of documents on April 25, 2016, which the trial court denied as untimely.   *Id.* (citing R.R. at 1900a).

Pennsylvania Rule of Evidence 1006, provides:

The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court.  The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Pa.R.E. 1006.

Here, our review of the record supports the trial court's conclusion that Appellant's objection to Mr. Morse's testimony was untimely and thus, waived. The trial transcript reveals that on April 25, 2016, many days ***after*** Mr. Morse

_____

[14] In his brief, Appellant claims that he ordered only 100,400 dosage units of buprenorphine.  Our review of the record, however, yields no support for this claim.  Thus, we cannot confirm whether Appellant testified or produced any evidence about this lower figure of dosage units before the trial court. Appellant also does not offer any citation to the record to support this claim.

testified regarding Appellant's purchase of 589,140 dosage units of buprenorphine, Appellant objected to such testimony invoking Rule 1006. *See*. R.R. at 1900a. In fact, at the time of the objection, Appellant's counsel recognized the lapse of time between the testimony and the objection. *Id.* ("We're asking, *after* the fact of the summary was testified to, to have those records produced so that we could provide testimony as to the actual records.") (emphasis added). Accordingly, because Appellant failed to object contemporaneously, the trial court did not abuse its discretion in denying his Rule 1006 motion for disclosure of documents.

Even if Appellant's motion for disclosure was not untimely, he still is not entitled to relief. As the trial court observed:

> During oral argument on [Appellant's] post-sentence motion, defense counsel acknowledged that before trial the Commonwealth had provided a CD to him which contains 35 documents from Cardinal Health. Apparently, these are the records he argued the Commonwealth failed to produce. Also, counsel for the Commonwealth stated before trial, the Commonwealth did provide defense counsel unfettered access to records of Cardinal Health and the pharmacies. In fact, [Appellant] and his attorney did go to the offices of the Commonwealth's counsel and had an opportunity to inspect those records. Compliance with Rule of Evidence 1006 may not have been an issue at trial.

Trial Court Opinion, 9/21/16, at 11 (unnecessary capitalization omitted). As the trial court found, the Commonwealth provided Appellant with the records at issue. Therefore, Appellant is not entitled to relief.

Appellant next challenges the trial court's decision to allow the Commonwealth to cross-examine Appellant's witness Dr. Bhagwandien about

whether he had collaborative agreements with nurse practitioners.[15] Appellant's Brief at 47. In particular, Appellant argues that, in cross-examining Dr. Bhagwandian, the Commonwealth exceeded the scope of direct examination. *Id.*

Preliminarily, we note that "cross-examination is the primary method for testing the believability of a witness and the truth of his testimony." ***Commonwealth v. Chmiel***, 889 A.2d 501, 527 (Pa. 2005) (citation omitted). Pennsylvania Rule of Evidence 611(b) addresses the scope of cross-examination, providing that "[c]ross-examination of a witness other than a party in a civil case should be limited to the subject matter of the direct examination and matters affecting credibility; however, the court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Pa.R.E. 611(b). "Cross-examination may be employed to test a witness' story, to impeach credibility, and to establish a witness's motive for testifying. The scope of cross-examination is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion." ***Chmiel***, 889 A.2d at 527 (citation and quotation marks omitted).

Here, the following exchange between the Commonwealth and Dr. Bhagwandian on cross-examination is at issue.

> Q. Do you know what a collaborative agreement is with a nurse practitioner?

---

[15] The Commonwealth points out, and we agree, that Appellant's brief is devoid of any citation to the record where he preserved this issue for appeal.

A. Yes. I have nurse practitioners that work for me at the hospital?

Q. You do now?

A. Yes, I do.

[Defense counsel]: Your Honor, I'm going to object. This is outside of the direct.

[Commonwealth]: Your Honor, he testified generally about the practice and about minutia of the practice.

[The trial court]: The objection is overruled.

BY [Commonwealth]:

Q. Did you have a collaborative agreement with any of the nurse practitioners at [Appellant's] practice?

A. No, I did not.

Q. So if there's an indication in one of the logs that has a nurse practitioner issuing Suboxone prescription with her name followed by Dr. Bhagwandian, that was not authorized by you?

A. No, that was not.

R.R. at 1776a.

Appellant argues that the Commonwealth's cross-examination of Dr. Bhagwandian exceeded the scope of direct examination. Appellant argues that the "inference that the Commonwealth sought to derive was that [Appellant] used nurse practitioners to improperly distribute medicines in violation of the law." Appellant's Brief at 47-48.

The Commonwealth disagrees, arguing that on direct-examination, Dr. Bhagwandian "described his prescribing philosophy and methods." Commonwealth's Brief at 27. The Commonwealth points out that Dr. Bhagwandian "described how the roster of 100 patients that he was permitted

to maintain by law would constantly 'rotate' among doctors depending on 'whoever picks up the patients.'" *Id.* (record citations omitted).

> As a logical follow up question [Dr. Bhagwandian] was asked if he knew what drugs [Appellant] was prescribing and selling to Bhagwandian's patients. He did not know. A subsequent question about a notation in [Appellant's] drug log indicating that a nurse practitioner had issued a Suboxone prescription on Bhagwandian's behalf was absolutely proper to explore both Bhagwandian's actual knowledge of the methodology and controls in place at the practice and his veracity. How and by whom prescriptions were being written within the practice was an entirely proper avenue for questioning for a witness who expressed a certain degree of familiarity with these topics.

*Id.* Based upon record review, we agree with the Commonwealth's contention. As the trial court aptly reasoned:

> Dr. Bhagwandian testified extensively during direct examination about his Suboxone practice with [Appellant], including the standards he used in choosing to prescribe Suboxone. He also provided testimony regarding [Appellant's] psychiatry practice and how Dr. Bhagwandian's own prescribing practices would at times intersect with [Appellant's] psychiatry practice. These general details about the methods of prescribing Suboxone and Subutex at [Appellant's] practice provided adequate basis for the Commonwealth to cross-examine Dr. Bhagwandian regarding collaborative agreements with nurse practitioners.

Trial Court Opinion, 1/11/17, at 16-17. Accordingly, given Dr. Bhagwandian's undisputed direct testimony and our standard of review, we cannot conclude that the trial court abused its discretion in allowing the Commonwealth to cross-examine Dr. Bhagwandian about collaborative agreements with nurse practitioners.

Appellant next argues that the trial court abused its discretion in imposing consecutive sentences,[16] which are excessive in the aggregate.[17]

It is well-settled that "[t]he right to appeal a discretionary aspect of sentence is not absolute." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa. Super. 2011). Rather, where an appellant challenges the discretionary aspects of a sentence, an appellant's appeal should be considered as a petition

_____

[16] When reviewing a challenge to the trial court's discretion, our standard of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

*Commonwealth v. Bowen*, 55 A.3d 1254, 1263 (Pa. Super. 2012) (quoting *Commonwealth v. Cunningham*, 805 A.2d 566, 575 (Pa. Super. 2002)), *appeal denied*, 64 A.3d 630 (Pa. 2013).

[17] Appellant's challenge to his aggravated-range sentence is waived because he failed to raise it in his Rule 1925(b) statement. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a [Rule] 1925(b) statement will be deemed waived."); Pa.R.A.P. 1925(b)(4)(vii). Even in the absence of waiver, Appellant is not entitled to relief. As the trial court explained:

> The sentences imposed on count 5 as to [M.M], count 6 as to [C.Y.], count 7 as to [A.A.], count 10 as to [T.C.], and count 15 as to [A.Z.] of not less than 12 months or more than 24 months on each count are aggravated sentences for the following reasons. [Appellant] shows no remorse. The victims were particularly vulnerable due to their drug addictions, mental health needs, and poor financial conditions. [Appellant] took advantage of these victims by using his position as a medical professional and his superior financial position to dispense addictive drugs, defer payments on their debts to him, and give some of them jobs and free housing in exchange for various sexual favors.

Amended Sentencing Order, 9/21/16, at 3 (unnecessary capitalizations omitted).

for allowance of appeal.  ***Commonwealth v. W.H.M.***, 932 A.2d 155, 162 (Pa. Super. 2007).  As we stated in ***Commonwealth v. Moury***, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Id.*** at 170 (citing ***Commonwealth v. Evans***, 901 A.2d 528 (Pa. Super. 2006)).  Whether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case basis.  ***See Commonwealth v. Kenner***, 784 A.2d 808, 811 (Pa. Super. 2001), ***appeal denied***, 796 A.2d 979 (Pa. 2002).

Here, Appellant has satisfied the first three requirements of the four-part ***Moury*** test.  Appellant filed a timely appeal to this Court, preserved the issue on appeal through his post-sentence motions, and included a Pa.R.A.P. 2119(f) statement in his brief.[18]  We, therefore, need to determine only if Appellant's sentencing issues raise a substantial question.

---

[18] Rule 2119(f) provides that "[a]n appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence."  Pa.R.A.P. 2119(f).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. **Commonwealth v. Paul**, 925 A.2d 825, 828 (Pa. Super. 2007). We have found that a substantial question exists "when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Phillips**, 946 A.2d 103, 112 (Pa. Super. 2008) (citation omitted), **appeal denied**, 964 A.2d 895 (Pa. 2009). "[W]e cannot look beyond the statement of questions presented and the prefatory [Rule] 2119(f) statement to determine whether a substantial question exists." **Commonwealth v. Christine**, 78 A.3d 1, 10 (Pa. Super. 2013), **affirmed**, 125 A.3d 394 (Pa. 2015).

It is settled that this Court does not accept bald assertions of sentencing errors. **See Commonwealth v. Malovich**, 903 A.2d 1247, 1252 (Pa. Super. 2006). When we examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists, "[o]ur inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." **Commonwealth v. Ahmad**, 961 A.2d 884, 886-87 (Pa. Super. 2008) (quoting **Commonwealth v. Tirado**, 870 A.2d 362, 365 (Pa. Super. 2005)). A Rule 2119(f) statement is inadequate when it "contains incantations of statutory provisions and pronouncements of conclusions of law[.]"

*Commonwealth v. Bullock*, 868 A.2d 516, 528 (Pa. Super. 2005) (citation

omitted).

Here, Appellant asserts in his Rule 2119(f) statement:

[T]he [trial] court imposed both aggravated range sentences and standard guideline range sentences. It ordered that each sentence, twelve in total, run consecutive to one another. As a result, the aggregate minimum judgment of sentence was over eleven years. At the time the trial court imposed its amended sentencing order, [Appellant] was seventy years of age. The trial court's sentence is in effect a *de facto* life sentence on an individual who cannot pose any threat to society due to both the loss of his license and his age.

Appellant's Brief at 27. Based on Appellant's 2119(f) statement, we conclude

that he has failed to raise a substantial question. Appellant's excessiveness

claim is premised on his argument that the trial court imposed consecutive

sentences and failed to consider his mitigating circumstances, such as his age

and loss of license. Specifically, Appellant claims that, because the trial court

ordered his sentences to run consecutively, his aggregate sentence of 133 to

266 months in prison was excessive. We consistently have recognized that

excessiveness claims premised on imposition of consecutive sentences do not

raise a substantial question for our review. *See Commonwealth v.*

*Caldwell*, 117 A.3d 763, 769 (Pa. Super. 2015) (*en banc*) (stating, "[a]

court's exercise of discretion in imposing a sentence concurrently or

consecutively does not ordinarily raise a substantial question[.]"), *appeal*

*denied*, 126 A.3d 1282 (Pa. 2015); *see also Commonwealth v. Ahmad*,

961 A.2d 884, 887 n.7 (Pa. Super. 2008); *Commonwealth v. Pass*, 914

A.2d 442, 446-47 (Pa. Super. 2006). Additionally, Appellant claims that the

trial court failed to consider his mitigating circumstances, specifically his "advanced" age of over seventy years. Appellant's Brief at 50. In **Commonwealth v. Eline**, 940 A.2d 421 (Pa. Super. 2007), we concluded that an appellant's argument that "the trial court failed to give adequate consideration to [his] poor health and advanced age" in fashioning his sentence does not raise a substantial question. **Eline**, 940 A.2d at 435. In so concluding, we explained that "[t]his court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." **Id.** (citation omitted); **see Commonwealth v. Disalvo**, 70 A.3d 900 (Pa. Super. 2013) (citations omitted) ("This Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review."); **see also Commonwealth v. Berry**, 785 A.2d 994 (Pa. Super. 2001) (explaining allegation that sentencing court failed to consider certain mitigating factor generally does not raise a substantial question); **Commonwealth v. Cruz-Centeno**, 668 A.2d 536, 545 (Pa. Super. 1995) ("[a]n allegation that a sentencing [judge] 'failed to consider' or 'did not adequately consider' certain factors does not raise a substantial question that the sentence was inappropriate,"), **appeal denied**, 676 A.2d 1195 (Pa. 1996); **Commonwealth v. Bershad**, 693 A.2d 1303, 1309 (Pa. Super. 1997) (finding absence of substantial question where appellant argued the trial court failed to adequately consider mitigating factors and to impose an individualized sentence). Consistent with the foregoing cases, we conclude

that Appellant failed to raise a substantial question with respect to his excessiveness claim premised on the imposition of consecutive sentences and inadequate consideration of mitigating factors.

Insofar as Appellant relies on **Commonwealth v. Dodge**, 77 A.3d 1263 (Pa. Super. 2013), **appeal denied**, 91 A.3d 161 (Pa. 2014), for relief, such reliance is inapposite. As we explained in **Dodge**:

> A defendant may raise a substantial question where he receives consecutive sentences within the guideline ranges **if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence**; however, **a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question**. **See** [] **Moury**, 992 A.2d [at] 171-72 [] ("The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.").

**Dodge**, 77 A.3d at 1270 (emphasis added). Thus, under **Dodge**, a claim that a sentence is excessive due to it consecutive nature generally does not raise a substantial question for purposes of Section 9781(b) of the Sentencing Code. Nonetheless, in **Dodge**, this Court held that the defendant raised a substantial question when he claimed that his aggregate sentence of 40 years and 7 months to 81 years and 2 months of incarceration was excessive based on the criminal conduct in which he engaged. **Id.** at 1273. The defendant in **Dodge** had been convicted of forty counts of receiving stolen property, two counts of burglary, two counts of criminal trespass, and one count each of possession of a small amount of marijuana, possession of drug paraphernalia, and

unauthorized use of a motor vehicle. *Id.* at 1266–67. We cautioned that although Dodge had raised a substantial question in his particular case, a defendant does not raise a substantial question "where the facts of the case [being reviewed] do not warrant the conclusion that there is a plausible argument that the sentence is *prima facie* excessive based on the criminal conduct involved." *Id.* at 1271.

The case at bar is distinguishable from ***Dodge*** because the trial court there seemed to want the defendant, who had not committed crimes against a person, incarcerated for life. Based on uncontradicted evidence here, Appellant used his position of trust and authority as a psychiatrist to exploit vulnerable, opioid-addicted young women, whose addictions he nursed, for his own sexual gratification. Accordingly, Appellant here has failed to raise a substantial question.

Even if we were to determine that Appellant's discretionary aspect of sentencing claim raised a substantial question, we still would conclude that he is not entitled to relief. "Although Pennsylvania's system stands for individualized sentencing, the court is not required to impose the 'minimum possible' confinement." ***Moury***, 992 A.2d at 171 (citation omitted). "Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question." ***Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa. Super. 2013); ***see also***

42 Pa.C.S.A. § 9721(a) (providing that the court may impose sentences "consecutively or concurrently"); **Commonwealth v. Johnson**, 873 A.2d 704, 709 n.2 (Pa. Super. 2005) (noting that challenges to the trial court's discretion to impose consecutive or concurrent sentences ordinarily does not raise a substantial question); **Commonwealth v. Hoag**, 665 A.2d 1212, 1214 (Pa. Super. 1995) (stating that an appellant is not entitled to a "volume discount" for his crimes by having all sentences run concurrently). "The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the **most extreme circumstances**, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." **Moury**, 992 A.2d at 171-72 (citation omitted) (emphasis added).

Instantly, Appellant seems to request a volume discount for committing multiple crimes on account of his age and because he claims that he has accepted responsibility and is no longer capable of committing those crimes, as he cannot prescribe medications due to the loss of his medical license.[19] Appellant's Brief at 50. Significantly, Appellant does not argue that his aggregate sentence of 133 to 266 months' imprisonment represents an "extreme circumstance." On the contrary, Appellant acknowledges that his sentence for each crime was either in the standard or aggravated range of the

_____

[19] Appellant also posits that "[i]n a time when prison over-crowding is considered a significant problem, keeping an elderly individual with no prior criminal record who is not at risk of re-offending incarcerated for over a decade is untenable." Appellant's Brief at 52.

guidelines. Also, as the trial court noted, Appellant committed "different crimes which did not arise from a single event or episode. Rather, the facts underlying the charges constitute distinct and disparate criminal behavior by [Appellant] toward multiple victims." Trial Court Opinion, 1/11/17, at 22. Finally, we agree with the Commonwealth's position that Appellant's request for a volume discount should be characterized properly as a "senior citizen discount." Commonwealth's Brief at 33. As the Commonwealth notes, "[t]here is a certain degree of irony in a man who, as of 2012, was feeling sufficiently spry to engage in concurrent sexual relationships with a 25 year old and a 19 year old seeking mercy on account of his advanced age." *Id.* at 33-34. We, therefore conclude that the trial court acted within its discretion in imposing consecutive sentences after reviewing the record, including any mitigating factors, and the presentence investigation report ("PSI") *sub judice*. We note that

> [w]here the sentencing court had the benefit of a [PSI], we can assume the sentencing court was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code.

*Commonwealth v. Griffin*, 65 A.3d 932, 937 (Pa. Super. 2013) (citations and internal quotation marks omitted), *appeal denied*, 76 A.3d 538 (Pa. 2013). Discerning no abuse of discretion by the trial court, we will not disturb Appellant's sentences on appeal.

We now address Appellant's argument that the trial court abused its discretion in finding that he did not demonstrate good cause or exceptional circumstances for purposes of waiving his PCRA rights to proceed with an ineffectiveness claim on direct appeal.

In **Commonwealth v. Holmes**, 79 A.3d 562 (Pa. 2013), our Supreme Court reaffirmed its prior holding in **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002), that, absent certain circumstances, claims of ineffective assistance of counsel should be deferred until collateral review under the Post Conviction Relief Act. **Holmes**, 79 A.3d at 576. The Court explained in a later decision:

> We recently held in **Holmes** that claims of ineffective assistance of counsel litigated after our decision in **Grant** are not generally a proper component of a defendant's direct appeal. In **Holmes**, this Court reaffirmed the general rule of deferral established in **Grant**, and disapproved of expansion of the so-called **Bomar**[20] exception, which allowed for the presentation of ineffectiveness claims on direct appeal if the trial court held an evidentiary hearing and disposed of the ineffectiveness claims in its opinion. This Court in **Holmes** limited the **Bomar** exception to its pre-**Grant** facts. We further recognized two exceptions to the **Grant** deferral rule, both falling within the discretion of the trial court. First, we held that trial courts retain discretion, **in extraordinary circumstances**, to entertain a discrete claim of trial counsel ineffectiveness if the claim is both **apparent from the record and meritorious**, such that immediate consideration best serves the interest of justice. Second, we held that trial courts also have discretion to entertain prolix claims of ineffectiveness if there is a good cause shown and the unitary review thus permitted is accompanied by a **knowing and express waiver by the defendant** of the right to pursue a first PCRA petition.

**Commonwealth v. Arrington**, 86 A.d 831, 856-57 (Pa. 2014) (emphasis added). An example of "good cause" would be where the defendant is serving a sentence so short as to be deprived of an opportunity to seek collateral

---

[20] **Commonwealth v. Bomar**, 826 A.2d 831 (Pa. 2003).

review of his or her conviction. **See Holmes**, 79 A.3d at 578 (noting that unitary review offers defendants who receive shorter prison sentences or probationary sentences the prospect of litigating their constitutional claims sounding in trial counsel ineffectiveness; for many of these defendants, post-appeal PCRA review may prove unavailable."); **see also** 42 Pa.C.S.A. § 9543(a)(1)(i). Before a trial court may permit such unitary review, the defendant's accompanying PCRA waiver must make clear and certain that any further collateral attack is subject to the PCRA's time-bar restrictions, as detailed in Section 9545(b). **Id.** at 579 (explaining that "the accompanying PCRA waiver must embrace more than exhaustion of the defendant's first PCRA petition, but instead must make clear that **any** further collateral attack is subject to the time-bar restrictions of Section 9545(b).") (Emphasis in original).

Here, Appellant's claim fails for several reasons. At the core, Appellant seeks review of his PCRA claims because he does not wish to wait on account of his "advanced age." The Commonwealth points out, Appellant has not established that his ineffectiveness claim is capable of being reviewed on the existing record. Commonwealth's Brief at 35. In fact, Appellant's ineffectiveness claims may require additional evidentiary hearings. As the trial court reasoned:

> [A] discrete claim or claims of attorney Troese's ineffectiveness is not apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice. Second, [Appellant] seeks to litigate multiple or prolix claims of counsel ineffectiveness, including possible non-record-based claims, on post-verdict motion. The reason advanced by

[Appellant] for wanting to raise such claims on post-sentence motion is to possibly reach a more expeditious resolution of an appeal. This is not sufficient "good cause" for departing from the general rule that claims of ineffective counsel are not to be raised on direct appeal but, rather, they are to be brought in a petition under the [PCRA].

Trial Court Opinion, 9/21/16, at 32. Discerning no abuse of discretion, Appellant is not entitled to relief and is permitted to raise any ineffectiveness claims on collateral review without prejudice.

Finally, Appellant argues that the trial court erred in refusing to allow his trial counsel to withdraw at the post-sentence stage and, as a result, violated his rights under the Sixth Amendment to the United States Constitution.[21]

> [T]he right to counsel is guaranteed by both the Sixth Amendment to the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution. In addition to guaranteeing representation of the indigent, these constitutional rights entitle an accused "to choose at his own cost and expense any lawyer he may desire." **Commonwealth v. Novak**, 395 Pa. 199, 213, 150 A.2d 102, 109, *cert denied*, 361 U.S. 882, 80 S.Ct. 152, 4 L.Ed.2d 118 (1959). The right to "counsel of one's choosing is particularly significant because an individual facing criminal sanctions should have great confidence in his attorney." **Moore v. Jamieson**, 451 Pa. 299, 307-08, 306 A.2d 283, 288 (1973).
>
> We had held, however, that the constitutional right to counsel of one's choice is not absolute. **Commonwealth v. Robinson**, 468 Pa. 575, 592-93 & n. 13, 363 A.2d 665, 674 & n. 13 (1976). Rather, "the right of the accused to choose his own counsel, as well as the lawyer's right to choose his clients, must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice." **Id.** at 592, 364 A.2d at 674 (internal quotations omitted). Thus, this Court has explained that while defendants are entitled to choose their own counsel, they should not be

---

[21] To the extent Appellant challenges the denial of his second motion for continuance of the post-sentence hearing, such challenge is waived because Appellant failed to raise it before the trial court. **See** Pa.R.A.P. 302(a); **Lord**, *supra*.

permitted to unreasonably "clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice." ***Commonwealth v. Baines***, 480 Pa. 26, 30, 389 A.2d 68, 70 (1978). At the same time however, we have explained that "'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.'" ***Robinson***, 468 Pa. at 593-94, 364 A.2d at 675 (quoting ***Ungar v. Sarafite***, 3476 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)).

***Commonwealth v. Prysock***, 972 A.2d 539, 542 (Pa. Super. 2009) (quoting

***Commonwealth v McAleer***, 748 A.2d 670, 673-74 (Pa. 2000)).

Pennsylvania Rule of Criminal Procedure 120 provides in part:

**(B) Withdrawal of Appearance**

(1) Counsel for a defendant may not withdraw his or her appearance except by leave of court.

(2) A motion to withdraw shall be:

(a) filed with the clerk of courts, and a copy concurrently served on the attorney for the Commonwealth and the defendant; or

(b) made orally on the record in open court in the presence of the defendant.

(3) Upon granting leave to withdraw, the court shall determine whether new counsel is entering an appearance, new counsel is being appointed to represent the defendant, or the defendant is proceeding without counsel.

Pa.R.Crim.P. 120(B). The Comment accompanying Rule 120 states that "[i]f a post-sentence motion is filed, trial counsel would normally be expected to stay in the case until disposition of the motion under the post-sentence procedures adopted in 1993. Traditionally, trial counsel stayed in a case through post-verdict motions and sentencing." ***Id.*** Comment (citations omitted).

Instantly, based on our review of the voluminous record, we conclude that Appellant's constitutional rights were not violated. The crux of Appellant's argument is that he was prejudiced because the trial court, instead of granting trial counsel to withdraw, allowed him to remain in the case through the post-sentence stage and represent Appellant alongside his new attorneys. Appellant also claims that the trial court's decision made it more difficult for his new attorneys to argue his ineffectiveness claims against trial counsel. Appellant, however, does not assert what, if any, claims of ineffectiveness he was unable to present in the presence of trial counsel. Moreover, as the trial court aptly explained:

> [Appellant] suffered no prejudice and was not denied his right to chosen counsel at the argument on the post sentence motions for the following reasons. [The trial court] permitted appellate counsel Alexander Lindsay to participate in the August 25, 2016 argument on the trial counsel's post sentence motion. [The trial court] exercised [its] discretion and allowed appellate counsel to file a supplemental post sentence motion after the deadline for post sentence motions had passed. [The trial court] issued a decision on appellate counsel's supplemental [post-sentence] motion. Therefore, [Appellant's] appellate counsel had the opportunity to participate at the post[-]sentence motion stage, despite the fact that trial counsel had not been granted leave to withdraw. [Appellant] had the benefit of representation by trial counsel, who had participated directly in all pre-trial and trial proceedings, as well as the advice and argument of his chosen appellate counsel.

Trial Court Opinion, 1/11/17, at 4 (unnecessary capitalization omitted). Appellant's constitutional rights were not violated here because, at the post-sentence stage, he had the benefit of his new appellate counsels, Attorneys Lindsay and Salemme, as well as trial counsel. Appellant's claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/21/2018