J-S79029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
           :             PENNSYLVANIA
           :
v.            :
           :
           :
NIEJEA FRANKLIN STERN       :
           :
Appellant       :   No. 653 MDA 2018

Appeal from the Judgment of Sentence March 9, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0005134-2014

BEFORE: SHOGAN, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:         **FILED FEBRUARY 15, 2019**

Appellant, Niejea Franklin Stern, appeals from the judgment of sentence entered on March 9, 2018, as made final by the denial of Appellant's post-sentence motion on April 3, 2018. We affirm.

In this Court's earlier memorandum, we quoted the trial court's recitation of the facts:

> The testimony at trial showed that on August 19, 2014, in the area of Hall Manor, Harrisburg, Pennsylvania, Malik Stern-Jones ("victim") was shot and murdered. The victim was killed by a gunshot wound to the right side of his neck while the victim was sitting in a car. Dr. Wayne Ross, an expert forensic pathologist, testified that 12 gauge Federal Triball ammunition from a 12 gauge shotgun was used to kill the victim. Dr. Ross also indicated that the shot was fired 5-7 feet away from the window of the car and that the cause of death was a gunshot wound to the neck.
>
> Nicole Coleman, a resident of Hall Manor, was drinking at a nearby friend's place in the early morning hours of August 19, 2014. She went back home to pick up a couple of more

beers and noticed a young man that seemed out of place. Ms. Coleman noticed that he was wearing a neon green hooded sweatshirt with a white logo on it. Additionally, Ms. Coleman noticed that this young man was carrying a shotgun. She indicated the direction this young man was walking and shortly thereafter heard two shots fired and heard a car crash. While in her travels around the neighborhood that evening, Ms. Coleman noticed two individuals, Jessie and Freddie Jay, hanging around a car. Finally, Ms. Coleman identified Appellant as the person she encountered on the morning of the incident. . . .

David Lee testified that [Appellant] showed up at his house around 6:00 a.m. on August 19, 2014 and told him what happened. Mr. Lee testified that Appellant was wearing a green hoodie. Officer Jeffrey T. Cook, of the Harrisburg Police Department, . . . testified that when Appellant was arrested, he was wearing a green Notre Dame sweatshirt (a Kelly green or emerald green). The Commonwealth, through Officer Cook, introduced a Facebook photo that shows Appellant holding a shotgun.

**Commonwealth v. Stern**, 181 A.3d 442 (Pa. Super. 2017) (unpublished memorandum) at 1-20 (internal citations, corrections, and footnotes omitted), *quoting* Trial Court Opinion, 2/7/17, at 3-4.

The jury found Appellant guilty of first-degree murder and firearms not to be carried without a license;[1] the trial court then sentenced Appellant – who was 15 years old at the time of the murder – to serve a term of life in prison without the possibility of parole.

Appellant filed a direct appeal to this Court. We vacated Appellant's judgment of sentence and remanded for resentencing, in light of **Miller v. Alabama**, 567 U.S. 460 (2012) and **Commonwealth v. Batts**, 163 A.3d 410

---

[1] 18 Pa.C.S.A. §§ 2502(a) and 6105(a)(1), respectively.

(Pa. 2017). *Commonwealth v. Stern*, 181 A.3d 442 (Pa. Super. 2017) (unpublished memorandum) at 12-14; *see also Miller*, 567 U.S. at 470 (holding that a mandatory term of life in prison without the possibility of parole for juvenile offenders violates the Eighth Amendment's prohibition on cruel and unusual punishments); *Batts*, 163 A.3d at 415-416 (recognizing "a presumption against the imposition of a sentence of life without parole for a juvenile offender" and holding that, "[t]o rebut the presumption, the Commonwealth bears the burden of proving, beyond a reasonable doubt, that the juvenile offender is incapable of rehabilitation").

On March 9, 2018, the trial court resentenced Appellant to serve a term of 45 years to life in prison. N.T. Resentencing Hearing, 3/9/18, at 11.

Appellant filed a timely post-sentence motion and claimed that his sentence was "excessive and unreasonable . . . in light of the rehabilitative needs of [Appellant] and where the punitive measures inherent in this sentencing scheme could have been accomplished with the imposition of" a sentence of 35 years to life in prison. Appellant's Post-Sentence Motion, 3/19/18, at 1-3. The trial court denied Appellant's post-sentence motion on April 3, 2018 and Appellant filed a timely notice of appeal. Appellant raises one claim on appeal:

> Whether the trial court abused its discretion in sentencing Appellant to 45 years to life where such a sentence is excessive and unreasonable and constitutes too severe a punishment in light of the rehabilitative needs and age of Appellant and where the punitive measures inherent in the sentencing scheme could have been accomplished with the

imposition of a lesser sentence pursuant to the statutory mandatory minimum under 18 Pa.C.S.A. § 1102.1?

Appellant's Brief at 5.

Appellant's claim on appeal is a challenge to the discretionary aspects of his sentence. "[S]entencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion." *Commonwealth v. Ritchey*, 779 A.2d 1183, 1185 (Pa. Super. 2001). Moreover, pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. *Id.*

As this Court explained:

> [t]o reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [42 Pa.C.S.A.] § 9781(b).

*Commonwealth v. Cook*, 941 A.2d 7, 11 (Pa. Super. 2007).

In the case at bar, Appellant filed a timely post-sentence motion and notice of appeal. Further, within Appellant's post-sentence motion, Appellant preserved the claim he currently raises on appeal. Additionally, Appellant's brief contains a rule 2119(f) statement. Thus, we consider whether Appellant's

claim presents a "substantial question that the sentence appealed from is not appropriate under the Sentencing Code." ***Cook***, 941 A.2d at 11.

Generally, to raise a substantial question, an appellant must "advance a colorable argument that the trial judge's actions were: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. McKiel***, 629 A.2d 1012, 1013 (Pa. Super. 1993); ***Commonwealth v. Goggins***, 748 A.2d 721, 726 (Pa. Super. 2000) (*en banc*), *appeal denied*, 759 A.2d 920 (Pa. 2000). Additionally, in determining whether an appellant has raised a substantial question, we must limit our review to Appellant's Rule 2119(f) statement. ***Goggins***, 748 A.2d at 726. This limitation ensures that our inquiry remains "focus[ed] on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." ***Id.*** at 727 (internal emphasis omitted).

The trial court sentenced Appellant to serve a term of 45 years to life in prison for first-degree murder. Appellant claims that this sentence is manifestly excessive and fails to account for certain mitigating factors and his rehabilitative needs, such as that Appellant: was 15 years old at the time of the murder; "lacked the maturity of an adult and had an underdeveloped sense of responsibility leading to recklessness, impulsivity, and heedless risk taking;" was "all but abandoned by his parents by the age of 11;" "has been diagnosed with numerous mental health issues[] and lacked the support system to receive proper treatment and care;" "was extremely vulnerable to

negative influences and outside pressure and began using marijuana at the age of [nine] and selling marijuana and cocaine at the age of [nine or ten] years old;" "did not have strong parental figures to help guide his actions;" "lacked the ability to control his environment and extricate himself from harmful situations;" and, did not have a character that was "completely formed." Appellant's Brief at 11. Appellant claims that the trial court should have sentenced him to a term of 35 years to life in prison because that sentence would have taken into "consideration Appellant's age, immaturity, and difficult upbringing" while still giving "the court and the parole board a significant enough time to determine whether Appellant could be rehabilitated." *Id.* at 12.

This Court has "held that an excessive sentence claim – in conjunction with an assertion that the court failed to consider mitigating factors – raises a substantial question." *Commonwealth v. Johnson*, 125 A.3d 822, 826 (Pa. Super. 2015) (internal quotations and citations omitted).[2] As we have also held, a claim that the "sentencing court disregarded rehabilitation . . . in handing down its sentence presents a substantial question for our review." *Commonwealth v. Dodge*, 77 A.3d 1263, 1273 (Pa. Super. 2013) (*en banc*).

---

[2] We note that we have also "held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." *Commonwealth v. Eline*, 940 A.2d 421, 435 (Pa. Super. 2007) (internal quotations, citations, and corrections omitted); *see also Commonwealth v. Radecki*, 180 A.3d 441, 469 (Pa. Super. 2018) (collecting cases). Nevertheless, in light of our conflicting precedent, we will review the merits of Appellant's discretionary aspect of sentencing claim.

Therefore, we conclude that Appellant has presented a substantial claim allowing for our review.

Nevertheless, Appellant's claim that the trial court abused its discretion in failing to consider certain mitigating factors and his rehabilitative needs immediately fails because, during Appellant's resentencing hearing, the trial court declared that it "did review the presentence investigation [report] in its entirety" and the prior testimony from Appellant's psychiatrist. N.T. Resentencing Hearing, 3/9/18, at 4; **see also** Trial Court Opinion, 5/17/18, at 4 ("[t]his [c]ourt, in preparation of sentencing, reviewed the presentence investigation performed by Dauphin County probation, the sentencing memorandum submitted by [Appellant's] counsel, and the psychiatric evaluation done by Dr. Susan Rushing"). Given this fact, we must "presume that the sentencing judge was aware of relevant information regarding [Appellant's] character and weighed those considerations along with mitigating statutory factors." **Commonwealth v. Devers**, 546 A.2d 12, 18 (Pa. 1988).

We further note that the trial court expressly stated during the resentencing hearing that, in fashioning Appellant's sentence, it did consider the various mitigating evidence and Appellant's rehabilitative needs – but that it concluded a term of 45 years to life in prison was warranted under the facts of the case. The trial court explained:

> Once again in preparing for the resentencing today I did review everything from the August 2016 sentencing proceeding and I did review once again the factors that are

outlined in some of the court cases that were thoroughly detailed back in August of 2016 but just to mention those briefly, I did review again and consider again the impact of this case on the victim's family.

Again, I believe it was made clear back in 2016 that this was a senseless killing, a killing of a young man who was the father of four children, four young children and without question the impact on this family and those children who are now growing up without a father is nothing short of devastating and that has to be considered. I realize back in 2016 we went into this in much more detail but since all that testimony is incorporated, I am just going to summarize.

There's also the impact on the community that has to be considered. This was a shooting at 4:00 in the morning in a residential neighborhood, the Hall Manor neighborhood. Now again, a lot of times we hear claims that that is a high-crime, high-drug area and that may be true but I think we always have to remember that there are very good hard working people who live in that area who are trying to turn that neighborhood and that community around and make it a vibrant part of this particular city. And something like this, a shooting at 4 a.m. of a man sitting in a car shot essentially from behind, does damage to the ability of that community to recover. So I think that has to be considered in this case as well.

There is the threat of safety of the community, safety to the public imposed by [Appellant]. I believe at the last hearing I did outline in some detail the prior record of [Appellant]. There were four or five robberies and we did go over those robberies in some detail. I am not going to review those now. There were several assaults and a series of other crimes as well. And, as a matter of fact, at least the people in this room here today will recall [Appellant] had escaped from juvenile detention, was being transported here for a juvenile matter and he escaped from the authorities who were responsible to supervise him and transport him and several days later he was able to secure a gun, a shotgun and commit this murder all in a matter of a few days.

So I believe because of that prior record, because of the circumstances of this particular crime and the way it

occurred, someone who is a perfect stranger to this [Appellant] who he did not know, who he had no beef with, no argument with, no prior exposure to this particular individual, Malik Stern, I think that has to be factored in as to the nature of the offense and the impact that that has had on the public safety.

From the testimony at the trial another factor emerges that has to be considered is the degree of [Appellant's] culpability. The proof I believe was rather compelling that [Appellant] was the sole person responsible for this particular crime. There was a strong circumstantial case and as a matter of fact, getting into the whole issue as far as this particular neighborhood being a violent crime neighborhood and a drug trafficking type of neighborhood, one of the main witnesses in the trial literally spoke from the grave because he was murdered himself a few days or a few weeks, I forget the exact timing, before this trial. And his prior testimony from a preliminary hearing had to be read into the record in this trial. That was Freddie Williams who was murdered.

Again that had nothing to do with that of course and I am not suggesting otherwise but it just highlights the violence in this particular neighborhood that was going on with kids running around with guns. It was part of the problem and it just lends itself to that wild west reputation that the Hall Manor area sometimes has. And again that is unfortunate because as I said there are just so many good people that are trying to turn that neighborhood around. They are hard working people. They get up, go to work every day, do what they have to do to keep their community safe and these sort of incidents happen to ruin that calm and tranquility of the neighborhood. So [Appellant] was certainly culpable in the commission of this particular crime.

There was a lot of testimony at the previous hearing [Appellant's] age, he was 15 at the time, regarding his mental capacity and his maturity that was outlined by the psychiatrist not only in the report but in the testimony offered at the hearing.

Of course the prior record of [Appellant] was examined in some detail which is another factor that has to be considered and there was the degree of sophistication. Not only was

there an escape from the juvenile authorities but within just a few days he was able to obtain a firearm, a shotgun, and commit this particular crime so that was factored in as well.

So accordingly, at Count 1 . . . I am imposing a sentence of not less than forty-five years nor more than life imprisonment. . . .

N.T. Resentencing Hearing, 4/26/18, at 7-11.

Thus, as is apparent from the record, the trial court expressly considered and weighed the mitigating evidence in this case, as well as Appellant's rehabilitative needs. Appellant's claim to the contrary is belied by the record and, thus, fails.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/15/2019