J-S15023-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NUWRULDYIN JOHNSON | : | |
| | : | |
| Appellant | : | No. 1333 WDA 2019 |

Appeal from the Judgment of Sentence Entered June 19, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0011272-2018

BEFORE:   BENDER, P.J.E., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                          **FILED APRIL 3, 2020**

Appellant, Nuwruldyin Johnson, appeals from the judgment of sentence entered on June 19, 2019, as made final by the denial of Appellant's post-sentence motion on July 31, 2019.  We affirm.

The trial court thoroughly summarized the underlying facts of this case:

> On August 27, 2018, at approximately 10:00 a.m., an argument ensued between [Appellant] and his girlfriend, [T.G. (hereinafter "the Victim")], at her Pittsburgh apartment where they were both residing.  During the course of this argument, [the Victim] asked [Appellant] to leave the home and take his belongings with him.  Initially, [Appellant] started to gather his things, but then he approached [the Victim], getting within mere inches of her face.  [The Victim] told [Appellant] that "he needed to back up and just get his stuff and leave."
>
> [The Victim] then tried to "push him back and walk away," but that only escalated the situation. [Appellant] threw [the

---

[*] Former Justice specially assigned to the Superior Court.

Victim] "down to the bed," and, when she tried to get back up, he pushed her against the door of her closet and "tried to choke" her. He placed "both of his hands around" her neck. She was unable to breathe or speak. [The Victim] testified that "he was squeezing so tight I couldn't get no air in, that's why I couldn't even speak."

As [Appellant] was squeezing her neck with his hands, [the Victim] tried to defend herself by shoving [Appellant] away from her. [Appellant] released her from his grasp, shoving her to the floor and causing her to sustain scrapes on her leg that spanned the length of her shin to her knee. [Appellant] threatened [the Victim] that, if she did not stop fighting back, he would have "his sisters and cousin" come to [the Victim's] house to "handle" her, which she interpreted as a threat to have his family, who lived nearby, come beat her up. [The Victim] told [Appellant] that she was going to call 911, and [Appellant] stormed out of the house.

[The Victim] called 911 after [Appellant] left. Responding Officer Iani Williams, of the City of Pittsburgh Police Department, promptly arrived on the scene and observed that [the Victim] had "a large, [thick and red] scratch mark on [the front of] her left leg, bruises on both her arms, and redness to her neck." [The Victim] declined Officer Williams' invitation to seek medical attention for her injuries, but she was advised of the [protection from abuse (PFA)] process. [The Victim] estimated that the bruising on her neck lasted for approximately one [] week.

[Appellant] testified on his own behalf at trial and provided a much different account of the events. According to [Appellant], he and [the Victim] had been having problems, and he decided to leave her that morning. When he began packing his things, [the Victim] grew upset and started throwing his belongings around the room. She told him "[i]f you [are] going to leave, do not come back," to which he replied, "I didn't plan on it." [The Victim] then took his wallet, which contained her bus pass. [Appellant] testified that he told her that he needed to use the pass one more time to transport his belongings, and he promised that he would bring it back to her. He claimed that [the Victim] told him that he could not use it and that she said, "no, give me my

things now." [The Victim] "started reaching and grabbing" at [Appellant].

[Appellant] further testified that [the Victim] was "pulling" on his pants, trying to go into his pockets, and that they were "rolling around on the floor." He claimed he was telling [the Victim] to stop and leave him alone, and that he pushed her on the bed and got on top of her because she made him angry. He told her to "[j]ust chill," then tried to get back up and gather his things, but she continued to grab at him. At that point, [Appellant] decided that he did not care anymore, and he ran out of the house and to his cousin's residence. He asked his cousin to retrieve his things later. [Appellant] claimed that [the Victim] threatened to call the police if he left. He denied that he ever strangled [the Victim], but he admitted that he told her "[y]ou know who my family is." [Appellant] also never attempted to contact the authorities to report that [the Victim] was the one who attacked him.

Trial Court Opinion, 12/12/19, at 4-7 (citations omitted).

The Commonwealth charged Appellant with strangulation, simple assault, and terroristic threats.[1] Following a bench trial, the trial court found Appellant guilty of strangulation and simple assault and not guilty of terroristic threats. N.T. Trial, 3/20/19, at 39. On June 19, 2019, the trial court sentenced Appellant to serve a mitigated-range sentence of four to eight years in prison, followed by two years of probation, for the strangulation conviction.[2] N.T. Sentencing, 6/19/19, at 15.

_____

[1] 18 Pa.C.S.A. §§ 2718(a)(1), 2701(a)(1), and 2706(a)(1), respectively.

[2] The trial court also sentenced Appellant to serve two years of probation for the simple assault conviction. The trial court ordered that Appellant serve this term concurrently to the probationary term for the strangulation conviction. N.T. Sentencing, 6/19/19, at 15.

- 3 -

Appellant filed timely a post-sentence motion and claimed: 1) that the trial court's decision was against the weight of the evidence because he testified he never strangled the victim, he testified that "he and the victim tussled in a mutual encounter," and the "office[r] could not testify to any injuries on [the victim's] neck;" and 2) his mitigated-range sentence was excessive because he suffers from mental health issues, he "has a JRS plan," and he "believes he can be a productive member of society." Appellant's Post-Sentence Motion, 6/28/19, at 1-2; Appellant's Motion to Reconsider Sentence, 6/28/19, at 1-2.

On July 31, 2019, the trial court denied Appellant's post-sentence motion and Appellant filed a timely notice of appeal from his judgment of sentence. Appellant raises two claims on appeal:

> [1.] Was the verdict against the weight of the evidence when [the Victim's] testimony should not have been believed and the situation was more akin to mutual combat?
>
> [2.] Is [Appellant's] sentence of [four to eight] years of incarceration manifestly excessive and an abuse of the sentencing court's discretion despite being in the mitigated range of the guidelines as that sentence is too great based upon the circumstances of the offense and that [Appellant's] two children will now be placed up for adoption?

Appellant's Brief at 6 (some capitalization omitted).

Appellant first claims that the trial court's decision was against the weight of the evidence.

As our Supreme Court explained:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the [factfinder's] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-1055 (Pa. 2013) (quotations and citations omitted).

"An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court." *Id.* at 1055. Our Supreme Court summarized:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, [the Pennsylvania Supreme Court has] explained:

> The term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Id.* (quotations, citations, and emphasis omitted).

According to Appellant, the trial court's decision was against the weight of the evidence because:

> The testimony of [the Victim] of being choked and repeatedly thrown on the ground by her slightly-built[] ex-boyfriend, who was ending their relationship should be suspect, making her inherently unreliable as to make the [decision] in the instant case pure conjecture.  . . .
>
> [Further,] the facts of the instant case strongly suggest that [the Victim] started the physical fight and continued to fight in the altercation leading to her injuries.  She testified that it was indeed a "two-sided fight."

Appellant's Brief at 19-20.

The trial court ably explained why it rejected Appellant's weight of the evidence challenge:

> As noted, [the trial] court, which sat as the fact-finder in this case, carefully studied the tone and demeanor of the witnesses in this case. [The trial] court found [the Victim] to be highly credible. She was confident and consistent in her testimony, and her testimony was corroborated by the observations made by the responding officer, who [observed] the scrapes on her leg and the redness to her neck when she responded to the domestic violence call shortly thereafter.

Moreover, the [trial] court did not find [Appellant's] testimony to be credible in the least. His testimony had material inconsistencies and was unsupported by the other credible evidence in the record. For example, [Appellant] twice testified on direct examination that he pushed the victim onto the bed:

I did push her onto the bed because she said something bad, kind-of made me mad, I won't lie to you. She said: If you are going to be petty I am going to be petty, as well. So I push her on the bed, and I am on top of her.

However, on cross-examination, [Appellant] testified that "yes, I was on top of her, but I never pushed her." [Appellant's] version of events also failed to account for the injuries that were readily observable by law enforcement shortly after the altercation. The [trial] court also found his explanation of his comment regarding "you know who my family is" to be contrived and self-serving. [Appellant's] testimony simply failed to carry "the ring of truth," particularly when considered against the testimony provided by the [V]ictim and the responding officer.

Trial Court Opinion, 12/12/19, at 10-12 (emphasis, citations, and corrections omitted).

Thus, as the trial court explained, it rejected Appellant's weight of the evidence challenge because, after hearing the Victim and Appellant testify, it believed the Victim and disbelieved Appellant. On appeal, Appellant simply asks that we reweigh the evidence to favor his version of the events. *See* Appellant's Brief at 17-20. However, this is not our role. *See* ***Commonwealth v. Williams***, 854 A.2d 440, 445 (Pa. 2004) ("[i]n criminal proceedings, the credibility of witnesses and weight of evidence are determinations that lie solely with the trier of fact. The trier of fact is free to believe all, part, or none of the evidence. [An appellate court] will not reweigh

the evidence and substitute [its] judgment for that of the factfinder") (quotations omitted).

The trial court's decision in this case was based upon its credibility determinations and, as is evident by the trial court's thorough explanation in its opinion, was based upon its careful and considered evaluation of the evidence. The trial court's denial of Appellant's weight of the evidence claim – which simply asked the trial court to believe his version of the events – was not an abuse of discretion. Therefore, Appellant's first claim on appeal fails.

For Appellant's second claim on appeal, Appellant contends that the trial court abused its discretion in imposing a mitigated-range sentence of four to eight years in prison for the strangulation conviction. Appellant's Brief at 13-16. Specifically, Appellant claims that the trial court failed to consider the mitigating evidence that he suffers from mental health problems and that his "two children will now be placed up for adoption." *See id.* at 6.

Appellant's claim attacks the discretionary aspects of his sentence. "[S]entencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion." *Commonwealth v. Ritchey*, 779 A.2d 1183, 1185 (Pa. Super. 2001). Moreover, pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. *Id.*

As this Court explained:

> [t]o reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [42 Pa.C.S.A.] § 9781(b).

*Commonwealth v. Cook*, 941 A.2d 7, 11 (Pa. Super. 2007).

In the case at bar, Appellant filed a timely post-sentence motion and notice of appeal. Further, Appellant's post-sentence motion claimed that his sentence is manifestly excessive because the trial court failed to consider the mitigating evidence that Appellant suffers from mental health issues. Appellant's Motion to Reconsider Sentence, 6/28/19, at 1. Thus, Appellant preserved his appellate claim that, at sentencing, the trial court failed to consider his mental health problems.[3] We will now determine whether Appellant's claim presents a "substantial question that the sentence appealed from is not appropriate under the Sentencing Code." *Cook*, 941 A.2d at 11.

---

[3] Appellant waived any claim that the trial court failed to consider, as mitigating evidence, the fact that his "two children will now be placed up for adoption." *See* Appellant's Brief at 6. Appellant did not raise this claim at the sentencing hearing or in his post-sentence motion. *See* Pa.R.Crim.P. 720; Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"); *Commonwealth v. Cartrette*, 83 A.3d 1030, 1042 (Pa. Super. 2013) (*en banc*) ("issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived").

Generally, to raise a substantial question, an appellant must "advance a colorable argument that the trial judge's actions were: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. McKiel*, 629 A.2d 1012, 1013 (Pa. Super. 1993); *Commonwealth v. Goggins*, 748 A.2d 721, 726 (Pa. Super. 2000) (*en banc*), *appeal denied*, 759 A.2d 920 (Pa. 2000). Additionally, in determining whether an appellant has raised a substantial question, we must limit our review to Appellant's Rule 2119(f) statement. *Goggins*, 748 A.2d at 726. This limitation ensures that our inquiry remains "focus[ed] on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." *Id.* at 727 (internal emphasis omitted).

As to Appellant's first claim on appeal, Appellant's Rule 2119(f) statement contends that his sentence is manifestly excessive because the trial court failed to consider the mitigating factor that he suffers from mental illnesses. Appellant's Brief at 14.

This Court has "held that an excessive sentence claim – in conjunction with an assertion that the court failed to consider mitigating factors – raises a substantial question." *Commonwealth v. Johnson*, 125 A.3d 822, 826 (Pa. Super. 2015) (internal quotations and citations omitted).[4] Therefore, we

_____

[4] We note that we have also "held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial

- 10 -

conclude that Appellant has presented a substantial claim allowing for our review.

Nevertheless, Appellant's claim that the trial court abused its discretion in failing to consider this mitigating factor immediately fails because, during Appellant's sentencing hearing, the trial court expressly stated that it considered the pre-sentence investigation report. N.T. Sentencing, 6/19/19, at 2-3. Given this fact, we must "presume that the sentencing judge was aware of relevant information regarding [Appellant's] character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988).

We further note that the trial court also stated in its opinion that, in fashioning Appellant's sentence, it did consider Appellant's mental health problems – but that it concluded a term of four to eight years in prison was warranted under the facts of the case. *See* Trial Court Opinion, 12/12/19, at 15. As the trial court explained:

> Simply because mitigating factors were at play did not mean that this court was required to assign them more weight at the expense of other, more serious concerns that far outweighed any mitigating evidence. The fact remains that [Appellant] was convicted of crimes that involved him strangling and assaulting his girlfriend, which, when

question for our review." *Commonwealth v. Eline*, 940 A.2d 421, 435 (Pa. Super. 2007) (internal quotations, citations, and corrections omitted); *see also Commonwealth v. Radecki*, 180 A.3d 441, 469 (Pa. Super. 2018) (collecting cases). Nevertheless, in light of our conflicting precedent, we will review the merits of Appellant's discretionary aspects of sentencing claim.

considered against his criminal history, indicated a pattern of assaultive and threatening behavior.

Indeed, as noted by the Assistant District Attorney at sentencing, [Appellant] had a high prior record score, and he is considered an RFEL (or repeat-felon) at the age of 31. This high prior record score was due to convictions for, *inter alia*, robberies (including at least one armed robbery), terroristic threats, simple assault, being a person not to possess, possessing a firearm with an altered manufacturer's number, and endangering the welfare of children. [Appellant's] classification as an RFEL did not adequately "speak to the extent of his criminal history" because "[i]f we didn't stop counting at five, he would be closer to a 15, which is not an [RFEL] by a little bit, but it is [RFEL] by quite a bit."

In setting forth its justification for the sentence, the [trial] court noted the following:

> When I look at your background, I understand you're not paper, but what you have done is reflected in this paper, and what you have done . . . robbery, robbery, simple assault, endangering the welfare of children, possessing firearms when you are a person not to possess. These things - - the first robbery was the longest one ago, 2005. Everything else is 2014, 2016, 2017, that's within the last couple of years.

The [trial] court found that [Appellant's] history and background demonstrated [Appellant's] inability to control his actions, which made him a danger to society. While the [trial] court considered [Appellant's] willingness to make substantial changes in his life, it noted that [Appellant] has had prior opportunities to receive treatment and make changes. [Appellant] had previously had a JRS service plan, but he had failed to take advantage of the services, resources and support offered by such a plan. The [trial] court also found that a more lenient sentence would not be sufficient to deter him from future criminal activity because [Appellant] had previously received three [] county-length sentences that had failed to provide adequate deterrence.

Trial Court Opinion, 12/12/19, at 16-17 (citations omitted).

Thus, as is apparent from the record, the trial court considered and weighed the mitigating evidence in this case. Appellant's claim to the contrary is belied by the record and, thus, fails.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/3/2020