**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDUARDO PEREZ | : | |
| | : | |
| Appellant | : | No. 812 EDA 2019 |

Appeal from the Judgment of Sentence Entered November 9, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000824-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDUARDO PEREZ | : | |
| | : | |
| Appellant | : | No. 813 EDA 2019 |

Appeal from the Judgment of Sentence Entered November 9, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000825-2017

BEFORE:   BOWES, J., STABILE, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    Filed: October 22, 2020

Appellant, Eduardo Perez, appeals from the judgment of sentence

following his conviction of rape of a child, involuntary deviate sexual

---

[*] Retired Senior Judge assigned to the Superior Court.

intercourse ("IDSI"), unlawful contact with a minor, endangering the welfare of children, and indecent assault.[1]  We vacate Appellant's convictions and remand for a new trial.

The trial court accurately summarized the evidence against Appellant at trial:

> In the summer of 2016, D.M. and C.R. (both 7 year-old children at the time of the incidents) were best friends who lived across the street from one another.  The children were virtually inseparable, and D.M. would spend the night at C.R.'s house almost every weekend.  C.R.'s household consisted of her grandmother, mother, baby brother, and the Appellant (C.R.'s step-father).  When D.M. would sleep over at C.R.'s house, they slept in either the bedroom with C.R.'s grandmother or the baby's bedroom.  The Appellant's bedroom was located down the hall from these bedrooms on the same floor.
>
> D.M. first testified about one incident involving the Appellant that occurred during one of these weekend visits in the summer of 2016.  The Appellant was standing by the opened bathroom door watching as D.M. changed into her bathing suit.  When D.M. asked the Appellant to close the door, he ignored her and continued to watch her.  He also informed D.M. that he did the same thing to C.R.
>
> The first incident of abuse occurred one night when [] D.M. and C.R. were attempting to sleep in the baby's bedroom.  The rest of the household was asleep.  The Appellant entered the girls' bedroom and took off D.M.'s nightgown before using his hand to touch the outside of her genitalia.  Though shaken, D.M. and C.R. were too frightened to tell anybody what had happened.
>
> The second incident of abuse occurred in the baby's bedroom in the presence of both D.M. and C.R.  The Appellant was naked and touched D.M.'s genitalia with his hand.  He then spit on his penis and placed his penis on the outside of D.M.'s genitalia before

---

[1] 18 Pa.C.S. §§ 3121(c), 3123(a)(1), 6318(a)(1), 4304(a)(1), and 3126(a)(7), respectively.

placing it "inside." [N.T., 6/19/18, at 64.] This caused D.M. discomfort.

The third incident of abuse occurred one day in C.R.'s grandmother's bedroom when the Appellant kissed both D.M. and C.R. on their mouths. The fourth incident of abuse occurred when the D.M. and C.R. were in the Appellant's bedroom. All three of them were naked, and the Appellant proceeded to touch each of the girls' genitalia with his penis.

Trial Court Opinion, 11/8/19, at 4-5 (footnotes and emphasis omitted).

D.M. disclosed the abuse to her mother several months later. D.M.'s mother took her to the hospital the following day, and D.M. also submitted to interviews with personnel from the Philadelphia Department of Human Services ("DHS"). In addition, Carolina Castano, an employee of the Philadelphia Children's Alliance ("PCA") who was trained in performing forensic interview techniques with child sexual abuse victims, conducted a video-recorded interview of D.M. in which D.M. discussed the abuse.

After receiving a report of potential sexual abuse, Sharina Johnson, a DHS investigator, met with C.R. twice at home, but C.R. denied that Appellant had abused her. C.R. also denied the occurrence of any abuse during a PCA forensic interview. Finally, Ms. Johnson interviewed C.R. at school on December 14, 2016, at which point she admitted to having been abused by Appellant. On December 21, 2016, Dr. Maria McColgan, a pediatrician specializing in child abuse cases, conducted a physical examination of C.R.

On December 31, 2016, Appellant was arrested and charged at CP-51-CR-0000824-2017 ("824-2017") with respect to the alleged abuse of D.M. and at CP-51-CR-0000825-2017 ("825-2017") with respect to the alleged abuse

of C.R. On motion by the Commonwealth, these cases were consolidated for trial.

A jury trial was held on June 19-22, 2018. At trial, D.M., D.M.'s mother, Ms. Johnson, Ms. Castano, and a Philadelphia Police Department detective assigned to D.M.'s case testified for the Commonwealth. C.R., who was living in another state with her biological father at the time of trial, did not testify. Nevertheless, Dr. McColgan testified regarding C.R.'s description of the abuse pursuant to the medical treatment exception to the hearsay rule. *See* Pa.R.E. 803(4). The Commonwealth also played for the jury a video recording of Ms. Castano's PCA interview of D.M. pursuant to the hearsay exception set forth in the Tender Years Hearsay Act ("TYHA"). *See* 42 Pa.C.S. § 5985.1. Appellant did not present any evidence at trial.

At the conclusion of trial, the jury found Appellant guilty of rape of a child, IDSI, unlawful contact with a minor, endangering the welfare of children, and indecent assault at 824-2017 and unlawful contact with a minor, endangering the welfare of children, and indecent assault at 825-2017. On November 9, 2018, the trial court sentenced Appellant to a term of imprisonment of 14 to 28 years at 824-2017 and a consecutive 5 year period of probation at 825-2017. Appellant filed a post-sentence motion, which was denied by operation of law on March 18, 2019. Appellant timely appealed.

Appellant raises the following issues on appeal:

> 1. Should not this Court address the merits of [A]ppellant's appeal where he filed one timely appeal for each docket and the transcript

- 4 -

numbers represent one judgment of sentence imposed by a single judge on one defendant during one proceeding?

2. Did not the lower court err and abuse its discretion by permitting a physician to tell the jury that the child complainant C.R. identified [A]ppellant as her assailant, and further erred by letting the physician vouchsafe for the credibility of that child?

3. Did not the lower court err and abuse its discretion when it permitted the Commonwealth to show the jury a video interview of the child complainant D.M. as substantive evidence where the strict notice requirements of 42 Pa. C.S. § 5985.1, the Tender Years Hearsay Act, were not met?

4. Was the cumulative effect of these errors so detrimental to [A]ppellant's case that a fair and just outcome could not be obtained?

Appellant's Brief at 3 (footnote omitted).

In his first issue, Appellant argues that Rule of Appellate Procedure 341(a) and **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), do not compel the quashal of his appeal based on the fact that identical notices of appeal were filed at 824-2017 and 825-2017. On May 1, 2019, this Court issued a rule directing Appellant to show cause why his appeal should not be quashed. Appellant filed a response, and, on December 4, 2019, this Court entered an order discharging the rule, but stating that the issue would be referred to the panel considering the merits of his appeal.

Rule 341(a) provides in relevant part that "an appeal may be taken as of right from any final order of a government unit or trial court." Pa.R.A.P. 341(a). In 2013, the Official Note of Rule 341 was amended to clarify that "[w]here . . . one or more orders resolves issues arising on more than one

docket or relating to more than one judgment, separate notices of appeal must be filed." Pa.R.A.P. 341, Official Note.

In **Walker**, the Commonwealth filed a single notice of appeal from an order that granted four motions to suppress filed by four separate defendants at four docket numbers. 185 A.3d at 971-72. The Court noted that Pennsylvania appellate courts had historically declined to quash a single notice of appeal challenging multiple appealable orders, but concluded that the 2013 amendment to the Official Note of Rule 341 establishes "a bright-line mandatory instruction to practitioners to file separate notices of appeal." **Id.** at 974-77. Thus, the Court held that "when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed." **Id.** at 977. The Court stated that the failure to comply with this rule requires the quashal of an appeal, but that this rule would only apply prospectively from the date that decision was issued. **Id.** at 977.

In **Commonwealth v. Jerome Johnson**, ___ A.3d ___, 2020 PA Super 164 (filed July 9, 2020) (*en banc*), this Court clarified that **Walker** does not require quashal of an appeal where the appellant filed a separate notice of appeal at each docket number resolved by the order from which the appeal is taken. **Id.** at *11-12. In **Jerome Johnson**, the appellant filed four separate notices of appeal from an order resolving issues at four lower court dockets, with each of the notices listing all four docket numbers but with one docket number italicized on each of the separate notices to indicate to which case the notice pertained. **Id.** at *3, *10. This Court determined that the notices were

- 6 -

in compliance with **Walker** and Rule 341 because "separate" notices were filed at each docket. **Id.** at *11. Furthermore, we held that **Walker** does not require the quashal of an appeal simply by virtue of an appellant's inclusion of two or more docket numbers on a notice of appeal. **Id.** at *12.

Subsequently, in **Commonwealth v. Rebecca Johnson**, ___ A.3d ___, 2020 PA Super 173 (filed July 23, 2020) (*en banc*), this Court reiterated that compliance with **Walker** does not necessitate individualized notices of appeal listing only one docket number for each matter being appealed. **Id.** at *2-3. In **Rebecca Johnson**, the appellant filed one notice of appeal listing each of the three docket numbers resolved by the trial court order; however, we were able to discern that the notice was filed at each of the lower court dockets because the clerk of courts had affixed distinct time stamps on each of the three notices. **Id.** at *3. We therefore did not quash the appeal. **Id.** at *4.

Here, Appellant filed the notices of appeal on March 18, 2019, and thus the rule set forth in **Walker** is applicable to this appeal. However, our review of the record reveals that Appellant filed separate notices at the two lower court dockets, which can be discerned based on the time stamps affixed to the notices reflecting that the notice in 824-2017 was filed at 11:45 a.m. and the notice in 825-2017 was filed two minutes later at 11:47 a.m. Although the two notices each list both trial court docket numbers and appear otherwise identical, this fact is irrelevant to our analysis. Therefore, we conclude that

Appellant complied with Rule 341(a) and **Walker** and we proceed to the merits of this appeal.

In his second issue, Appellant argues that the trial court erred in two respects with respect to Dr. McColgan's testimony. First, Appellant contends that the trial court impermissibly allowed Dr. McColgan to testify that C.R. identified Appellant as the perpetrator of the abuse contrary to the medical treatment exception to the hearsay rule, which does not permit admission of "statements as to fault or identification of the person inflicting harm." Pa.R.E. 803(4), Comment (citing **Commonwealth v. Smith**, 681 A.2d 1288 (Pa. 1996)). Specifically, Appellant challenges Dr. McColgan's use of the male pronoun "he" when recounting a series of questions she posed during her examination of C.R. (*e.g.*, "what did he do?" and "did he ever put his private part in your mouth?") and C.R.'s responses, in which she also used the pronoun "he" to describe the actions of her abuser. N.T., 6/21/18, at 27-29.

Second, Appellant challenges the following testimony by Dr. McColgan upon cross-examination:

> Q. Doctor, when you have children that come in and make these types of allegations and you have no findings of any injury, healed injury, or any scars, do you ever look back at what the child said and make a determination that it is unlikely that any abuse happened?
>
> A. Yes, of course.
>
> Q. How many times have you come into court and testified to that?
>
> A. Well, **when we don't think that anything happened, it doesn't go to court**, so very rarely.

*Id.* at 41 (emphasis added). Appellant contends that Dr. McColgan's statement "when we don't think that [any abuse] happened, it doesn't go to court" improperly bolstered the credibility of C.R. by expressing the witness's personal belief that the alleged abuse by Appellant had occurred. *Id.*

The Commonwealth argues that both of these claimed errors were waived in light of the fact that Appellant failed to make timely, contemporaneous objections during Dr. McColgan's testimony. We agree. "It is settled that an appellant's failure to raise a contemporaneous objection to evidence at trial waives that claim on appeal." *Commonwealth v. Radecki*, 180 A.3d 441, 455 (Pa. Super. 2018) (citation and quotation marks omitted). An appellant therefore "must object to errors, improprieties or irregularities at the earliest possible stage of the criminal . . . adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter." *Commonwealth v. Rosser*, 135 A.3d 1077, 1086 (Pa. Super. 2016) (*en banc*) (citation omitted). "The purpose of contemporaneous objection requirements respecting trial-related issues is to allow the court to take corrective measures and, thereby, to conserve limited judicial resources." *Commonwealth v. Sanchez*, 36 A.3d 24, 42 (Pa. 2011).

Here, prior to Dr. McColgan's testimony, Appellant generally objected to her testimony as being hearsay and not falling within the medical treatment exception, which the trial court overruled. N.T., 6/21/18, at 2-15. Appellant then requested that the court "keep out any identification of the perpetrator"

because the rules of evidence do not permit a medical professional to testify as to the perpetrator's identity. *Id.* at 15. The trial court stated that it "agree[d]" with Appellant's understanding that the applicable hearsay exception did not allow testimony related to the identification of the perpetrator and then advised:

> By the way, [counsel], if you feel that the Commonwealth has gone too far in terms of her line of questioning with the doctor, and getting into hearsay, feel free to object.

*Id.* at 16.

Appellant, however, did not object when Dr. McColgan used the pronoun "he" to describe C.R.'s abuser when recounting her examination of C.R. Furthermore, Appellant did not raise an objection at the conclusion of Dr. McColgan's testimony or seek to strike the offending statements. Therefore, Appellant did not preserve the objection to the offending testimony at the earliest possible opportunity and allow the trial court the opportunity to correct any potential error. *Radecki*, 180 A.3d at 455; *Rosser*, 135 A.3d at 1086.[2]

---

[2] The rules of evidence do provide that "[o]nce the court rules definitively on the record--either before or at trial--a party need not renew an objection . . . to preserve a claim of error for appeal." Pa.R.E. 103(b). However, the key feature in this rule is that the court must rule on the evidentiary issue "definitively"; here, the trial court only generally stated its agreement with Appellant's interpretation of the medical treatment exception with respect to identification and then invited Appellant to object if the Commonwealth crossed that line during its direct examination of Dr. McColgan. N.T., 6/21/18, at 15-16. As stated above, Appellant did not object to the testimony he challenges herein.

Furthermore, Appellant did not offer any objection related to the alleged bolstering of C.R.'s credibility by Dr. McColgan either at the time of the offending statement or at the conclusion of her testimony. This issue is thus also waived. *Radecki*, 180 A.3d at 455; *Rosser*, 135 A.3d at 1086. Accordingly, Appellant's second appellate issue merits no relief.

In his third issue, Appellant argues that the trial court erred by permitting the jury to view a video-taped PCA interview of D.M. in which she discussed the abuse perpetrated by Appellant. Appellant contends that the Commonwealth's mid-trial notice that it intended to admit D.M.'s out-of-court statement under the TYHA violated the strict statutory notice requirements for

_____

Even to the extent Appellant could have been found to have preserved his objection on this issue, Appellant would not be entitled to relief. Appellant's sole complaint is that Dr. McColgan used the male pronoun "he" when recounting her conversation with C.R., a usage which only limits the identity of the perpetrator roughly to half of the population. Notably, Dr. McColgan did not state Appellant's name, the nickname C.R. used to describe him, or reference C.R.'s relationship to the individual who abused her. Furthermore, Dr. McColgan did not state the perpetrator's age or offer any identifying features about the perpetrator. Moreover, even if Dr. McColgan had not used a male pronoun, it was clear from the balance of her testimony that the abuser was male as C.R. described the individual rubbing his "front private part" on her genitals and that a "white," "watery" substance came out of his private part, an apparent reference to semen. *Id.* at 27-28. Therefore, Dr. McColgan's use of the term "he" to describe the perpetrator did not constitute "statements as to [] identification of the person inflicting harm" that would bring her testimony outside of the medical treatment exception to the hearsay rule. Pa.R.E. 803(4), Comment; *cf. Commonwealth v. Vining*, 744 A.2d 310, 319 (Pa. Super. 1999) (*en banc*) (holding that doctor's testimony that victim specifically named the defendant as the perpetrator of abuse was not relevant to medical treatment, but that the fact that the perpetrator was a "male adult" may be relevant).

- 11 -

such evidence. Our review of evidentiary rulings, including on issues of hearsay, is pursuant to an abuse of discretion standard. **_Commonwealth v. Luster_**, \_\_\_ A.3d \_\_\_, 2020 PA Super 153, *4 (filed July 6, 2020). Questions of statutory interpretation are subject to a _de novo_ standard of review, and our scope of review is plenary. **_Id._**

The TYHA permits the admission of out-of-court statements of children victims or witnesses relating to certain statutorily enumerated offenses, including the sexual offenses at issue in this case. 42 Pa.C.S. § 5985.1(a).[3] Two requirements must be met before a TYHA statement may be admitted: (i) the court must find, "in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability" and (ii) the child either testified at the proceeding or was unavailable as a witness. 42 Pa.C.S. § 5985.1(a)(1)-(2). In addition, the TYHA includes a notice requirement as follows:

> A statement otherwise admissible under [the TYHA] shall not be received into evidence unless the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.

42 Pa.C.S. § 5985.1(b).

---

[3] Subsequent to the trial in this case, the TYHA was amended and subsection (a) was divided into new paragraphs and subparagraphs. **_See_** Act of June 28, 2019, P.L. 231, § 1. The relevant portions of the TYHA remain substantively the same after the amendments, and we cite to the version of the TYHA in effect at the time of trial.

In arguing that the Commonwealth did not provide sufficient notice under the TYHA, Appellant relies principally on this Court's decision in *Commonwealth v. Crossley*, 711 A.2d 1025 (Pa. Super. 1998). In *Crossley*, the defendant was charged with sexually abusing a three and one-half year old boy who he babysat for an afternoon. *Id.* at 1025-26. On the date of trial, the Commonwealth sought to allow the victim's mother and grandmother to testify regarding the victim's description of the abuse to them. *Id.* The defendant objected on the basis that he had only received the mother's and grandmother's statements as part of a discovery packet four days prior to trial, and the trial court ruled that notice was sufficient under the TYHA. *Id.* at 1026-27.

Interpreting the TYHA notice provision for the first time, this Court found that the TYHA requires the proponent to notify the opposing party of "an intention to use a specific [statement] in a particular manner." *Id.* at 1028; *see also Luster*, 2020 PA Super 153, *5. We observed that the TYHA's "explicit notice requirement has meaning beyond mere compliance with discovery requests":

> The statute mandates more than ordinary discovery. It mandates heightened discovery. It recognizes that child witnesses pose difficult problems for the parties, the court and the jury. A child may not be able to tell his story in court because of emotional trauma associated with the crime. The law, therefore, makes a special accommodation to enable the prosecution to prove its case in such circumstances. This accommodation in turn poses unique challenges for the defendant who must defend against a charge where the victim himself does not tell the jury what happened, but others to whom the victim talked become his surrogate in

> court. In permitting such hearsay, the legislature has determined
> that the defendant is entitled to a type of notice that is direct and
> specific in order to provide a meaningful opportunity to challenge
> the hearsay. For example, the defendant may wish to offer expert
> psychological evidence about the failure of children of certain ages
> to distinguish truth from fantasy or the defendant may have
> specific evidence relating to the victim's reliability. It is for these
> reasons that **the notice provisions are strict and must be
> strictly observed**.

***Crossley***, 711 A.2d at 1028 (emphasis added).

By not providing notice of its intent to admit the out-of-court statements until the date of trial, this Court determined that the Commonwealth had not complied with the strict notice provisions of the TYHA. ***Id.*** at 1027, 1029. Noting that the statute mandates that "in the event notice is not given, the 'statement **shall not** be received into evidence,'" we found a "prejudice analysis, which would require the defendant to establish what he would have done differently had he been given notice, [to be] inappropriate." ***Id.*** at 1028 & n.2 (quoting 42 Pa.C.S. § 5985.1(b); emphasis in original). Therefore, we concluded that "a party's failure to comply with the statute's provisions must be met with the result dictated by the statute," and vacated the defendant's conviction and awarded a new trial. ***Id.*** at 1028-29.

Following the briefing of this appeal, this Court issued its decision in ***Luster***, which also relates to the TYHA notice requirement. In ***Luster***, the defendant was charged with sexually abusing the victim when she was three or four years old in 2010 or 2011. 2020 PA Super 153, *1-2. In February 2019, one week prior to trial, the Commonwealth provided oral notice during plea negotiations that it intended to introduce a video of a 2018 forensic

interview with the victim pursuant to the TYHA. *Id.* at \*2-3. The Commonwealth gave oral notice a second time during jury selection, and, on the date of trial, provided written notice of its intent to play the video to the jury. *Id.* at \*3.

On appeal, this Court found that the Commonwealth's oral notice "a mere one week before trial . . . did not provide [the defendant] a 'fair opportunity to prepare to meet the statement,' . . . especially where the Commonwealth was in possession of the forensic interview for nearly one year prior to the date of trial." *Id.* at \*5 (quoting 42 Pa.C.S. § 5985.1(b)). While noting that the victim also offered her account of the abuse in live trial testimony, we concluded that "the Commonwealth's eleventh-hour notice failed to comport with the [TYHA's] strict notice requirements," and we were therefore required to vacate his convictions and remand for a new trial. *Id.* at \*7.

In the matter *sub judice*, the Commonwealth filed a notice of its intent to admit out-of-court statements by D.M. on February 28, 2018; this notice solely related to D.M.'s comments to her mother when D.M. first disclosed that Appellant had sexually abused her in November 2016. Notice of Intent to Proceed Under TYHA, 2/28/18, at 1-2, 6. Appellant informed the court at the outset of trial that he was not challenging the admission of D.M.'s statements to her mother, and D.M.'s mother testified regarding these statements on the first day of trial. N.T., 6/19/18, at 7-10, 88-89.

- 15 -

On the morning of June 20, 2018, the second day of trial, the Commonwealth electronically filed a second TYHA notice indicating that it "intends to play portions of D.M.'s interview from the [PCA]." Notice of Intent to Proceed Under TYHA, 6/20/18. Appellant moved to preclude the admission of the video of D.M.'s interview, arguing that while she did not contest the out-of-court statements by D.M. to her mother, notice was insufficient as to the PCA video to allow its admission under the TYHA. N.T., 6/20/18, at 32-36, 43. The Commonwealth argued in response that Appellant was aware of its intention to proceed under the TYHA as of the original notice filed approximately four months prior, and that the parties had been speaking "throughout the course of this week . . . as if this video is going to be played." *Id.* at 34, 38. The trial court denied Appellant's motion to preclude the admission of the PCA video, and found that the Commonwealth met the standard under the TYHA to allow the admission of D.M.'s statements during the PCA interview. *Id.* at 40-43, 55-56.[4] During the subsequent testimony of Ms. Castano, the PCA employee, the Commonwealth played her videotaped interview of D.M. to the jury. *Id.* at 67.

Consistent with *Crossley* and *Luster*, we agree with Appellant that the Commonwealth's notice as to the videotape of the PCA interview of D.M. did not comport with the "strictly observed" notice requirement of the TYHA.

---

[4] Appellant renewed his objection to the admission of the interview upon the trial court's ruling that the videotape of the PCA interview could be introduced as substantive evidence at trial. N.T., 6/20/18, at 56.

*Crossley*, 711 A.2d at 1028. The Commonwealth only provided notice of its intent to submit the PCA interview mid-trial, on the date it intended to admit the evidence. Such same-day notice was clearly insufficient under the TYHA to allow Appellant to prepare a defense against this evidence, particularly in light of the fact that the Commonwealth was in possession of the videotape well in advance of trial. *See id.* at 1027-29; *Luster*, 2020 PA Super 153, *5. Even to the extent the Commonwealth's discussions with Appellant during the week prior to trial "as if th[e] video [was] going to be played" would constitute notice under the TYHA, N.T., 6/20/18, at 38, this Court has explained that one week's notice does not satisfy the strict notice provision of the TYHA. *Luster*, 2020 PA Super 153, *5-7.

Furthermore, the fact that the Commonwealth provided adequate notice as to D.M.'s out-of-court statements to her mother and Appellant conceded the admissibility of those statements does not alter our conclusion with respect to D.M.'s PCA interview. The TYHA requires that the proponent give advance notice of the "specific" statement that it intends to submit into evidence "to provide the adverse party with a fair opportunity to prepare to meet the statement." 42 Pa.C.S. § 5985.1(b); *Crossley*, 711 A.2d at 1028. D.M.'s statements to her mother and during the PCA interview were given under different circumstances to different witnesses and present distinct issues of reliability. Therefore, notice as to D.M.'s statement to her mother did not provide Appellant with notice by which he could prepare a defense as to the PCA interview.

We hold that, because notice was not provided of the intent to introduce evidence under the TYHA "sufficiently in advance of" trial, 42 Pa.C.S. § 5985.1(b), the trial court erred by permitting the videotaped PCA interview of D.M. to be played to the jury. Accordingly, the "clear and unambiguous" mandate of the TYHA dictates that we vacate Appellant's convictions with respect to the abuse of D.M. at 812 EDA 2019 and remand for a new trial. *Luster*, 2020 PA Super 153, *7. Furthermore, because the alleged abuse with respect to C.R. and D.M. largely occurred while the other girl was in the same room, C.R. did not testify at trial, and D.M. described both her own and C.R.'s abuse during her testimony, we also vacate Appellant's convictions at 813 EDA 2019 and remand for a new trial in that matter.[5]

Judgments of sentence vacated. Matters remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/22/20

---

[5] In light of our disposition of this appeal, we need not address Appellant's fourth appellate issue that the cumulative effect of the trial errors was so great that a new trial was required.